KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94116
lking@kaplanfox.com
mchoi@kaplanfox.com
Telephone: (415) 772-4700
Facsimile: (415) 772- 4707

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
D. Greg Blankinship (*pro hac vice*)
445 Hamilton Ave, Suite 605
White Plains, New York 10601
gblankinship@fbfglaw.com
Telephone: (914) 298-3290
Facsimile: (914) 522-5561

*Attorneys for Plaintiffs*

GCA LAW PARTNERS LLP
KIMBERLY A. DONOVAN (SBN 160729)
ROBERT ANDRIS (SBN 130290)
2570 W. El Camino Real, Suite 400
Mountain View, CA 94040
kdonovan@gcalaw.com
randris@gcalaw.com
Telephone: (650) 428-3900
Facsimile: (650) 428-3901

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| INES BURGOS and MONGKOL MAHAVONGTRAKUL, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>SUNVALLEYTEK INTERNATIONAL, INC.,<br><br>Defendant. | Case Number: 4:18-cv-06910-HSG<br><br>STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION; ORDER |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

1

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received between January 2014 and the present will be preserved; and

b) The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary.

## 5. SEARCH

The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols to narrow the pool of collected documents to a set to undergo review for possible production. The parties have met and conferred, and expect to continue to do so, and hereby adopt the following search methodology to limit the volume of documents to be produced:

a) First, the parties shall agree on a list of custodians at Defendant Sunvalleytek International, Inc. ("Sunvalleytek") with potentially relevant information.

b) Second, the parties shall agree on search terms to identify potentially relevant information.

c) Third, the Producing Party shall run the agreed upon search terms on data sources (e.g., local hard drive, shared drives, cloud, external drives, etc.) where relevant information pertaining to the agreed upon custodian may reside.

d) Fourth, the parties shall agree on the universe of documents to be reviewed by the Producing Party for possible production.

e) Fifth, the Producing Party shall promptly produce non-privileged documents on a rolling basis.

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a party's production obligations or available objections under applicable law, or limit the ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation.

## 6. ESI NOT REASONABLY ACCESSIBLE

Any ESI that is not reasonably accessible is not subject to disclosure. While Sunvalleytek has searched, and will continue to search, for responsive materials located in its affiliated companies outside the U.S. to the extent feasible, nothing in this protocol requires an ESI search of data within companies other than Sunvalleytek itself. The party asserting that ESI is not reasonably accessible should be prepared to specify facts that support its contention. If the Receiving Party nonetheless believes that the requested production is reasonably accessible, the parties will meet and confer, in the presence of their respective e-discovery vendors or personnel, if needed, to address the need for the data and the burden and expense associated with producing the data, with the goal of minimizing any such burden and expense. If the parties fail to resolve their dispute, either party may then seek court intervention.

## 7. PRODUCTION FORMATS

The parties shall produce electronically stored information in reasonably usable form. Except for ESI to be produced in native format, namely (1) audio/video (e.g., .wav, .mpeg, .avi), (2) spreadsheet files (e.g., Excel), and (3) presentation application files (e.g., PowerPoint files), such reasonably usable form shall be in TIFF form with extracted text and associated metadata as set forth in Attachment A. If the Receiving Party, for good cause, seeks production in native format of specifically identified ESI that was produced originally in TIFF form, the Producing Party shall respond reasonably and in good faith to any such request.

The parties agree not to degrade the searchability of documents as part of the document

3

production process.

## 8. BATES STAMPING

The Producing Party will Bates stamp all ESI and hardcopy documents excluding any native files (i.e., audio/video files, Excel spreadsheets, and PowerPoint Presentations) by electronically "burning" onto each image a legible, unique Bates number that includes an alpha prefix along with a fixed number. Each Producing Party will have its own Bates-stamp numbering. For Defendant, the Bates-stamp will bear "SVTB" followed by the page number (e.g., "SVTB000001"). For Plaintiff, the Bates-stamp will contain "BUR" followed by the page number (e.g., "BUR000001"). Unless it would obscure, conceal or interfere with any information appearing on the document, the number must appear on the lower right-hand corner of the document. The appropriate confidentiality level of the document, if any, pursuant to the Court's confidentiality order, will be disclosed on the lower left-hand corner of the document.

If a document is produced in native format (i.e., audio/video files, excel spreadsheets, and PowerPoint Presentations), a single-page Bates stamped TIFF image slip-sheet containing the confidential designation and text stating that the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

## 9. EMAIL THREADING

In producing emails, the Producing Party will employ email threading to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain. As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Any de-duplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white

4

space) and attachments are wholly included in another more complete email. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

**10. AVOIDANCE OF DUPLICATE PRODUCTION**

The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). De-duplication shall not break apart families and shall be performed at a family level.

**11. DOCUMENTS IN HARDCOPY FORM**

Documents that exist in the normal course of business only in hardcopy form shall be scanned and produced in accordance with the specifications set forth in Attachment A. In scanning documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between attachments and their parent documents) shall be preserved. In the case of an organized compilation of separate documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

The parties shall meet and confer regarding the production of any non-custodial sources that exist only in hardcopy form prior to production. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI; specifically, the Producing Party is not required to create metadata fields for scanned hard copy documents, except where indicated in Attachment A.

**12. DOCUMENTS PROTECTED FROM DISCOVERY**

a) The parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine (excluding attorney-client privileged or attorney work product doctrine materials relating to trial

counsel, as further specified in 12(d)), the Producing Party will provide a log of the privilege material for each production, in an electronically searchable format (e.g., Excel), containing, for each document claimed as privileged, and as required by applicable law, including Fed. R. Civ. P. 26(b)(5)(A), a description of "the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

b) The Producing Party may redact information solely based on the attorney-client or attorney work-product privilege. Each redaction shall be indicated clearly on the document. For native Excel files requiring redaction, the Producing Party shall redact by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." Native PowerPoint presentations (including speaker notes and "hidden" slides) that require redactions shall be produced as images. All redacted documents will be identified as such within the "REDACTED" field in the .DAT.

c) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

d) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**13. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: September 16, 2019  **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By: /s/ D. Greg Blankinship
D. Greg Blankinship

**KAPLAN FOX & KILSHEIMER, LLP**

By: /s/ Mario M. Choi
MARIO M. CHOI

*Attorneys for Plaintiff*

**GCA LAW PARTNERS, LLP**

By: /s/ Kimberly A. Donovan
     KIMBERLY A. DONOVAN

*Attorneys for Defendant*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, D. Greg Blankinship, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September 2019, at White Plains, New York

/s/ D. Greg Blankinship
D. GREG BLANKINSHIP

<ins>ORDER</ins>

The above STIPULATION AND [PROPOSED] ORDER is GRANTED. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: 9/17/2019

_____
HON. HAYWOOD S. GILLIAM, JR.
UNITED STATES DISTRICT JUDGE

# ATTACHMENT A

1.  **IMAGES:**
    - Produce documents in Single Page Group IV TIFF files
    - Image Resolution at least 300 DPI
    - Black and White unless color is necessary to understand the meaning or where image is a product label
    - File Naming Convention: Match Bates Number and end with .tif or .tiff extension
    - Insert Placeholder image for files produced in Native form
    - Original document orientation shall be retained
    - The Producing Party has the option of producing in .pdf format if the .pdf file is searchable, in which case there shall be one .pdf file for every document. The file name for each such document shall match the Beg Bates for the document and end with a .pdf extension.

2.  **FULL TEXT EXTRACTION / OCR:**
    - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
    - Production format: Single text file for each document, not one text file per page
    - File Naming Convention: Match Beg Bates Number and end with .txt extension
    - The Producing Party need not produce extracted text for searchable .pdf files

3.  **LOAD FILE SPECIFICATIONS:**
    - **Images Load File:** OPT file
    - **Metadata Load File:** DAT file with field header information added as the first line of the file. Export using Concordance default delimiters
    - **Extracted TEXT:** Reference File Path to TEXT file in DAT file
    - **Native Files Produced:** Reference File Path to Native file in DAT file

4.  **ESI PRODUCTION METADATA FIELDS:**
    - **BegBates:** Beginning Bates Number
    - **EndBates:** Ending Bates Number
    - **BegAttach:** Beginning Bates number of the first document in an attachment range

- **EndAttach:** Ending Bates number of the last document in an attachment range
- **Custodian:** Name of the Custodian of the File(s) Produced – Last Name, First Name format
- **FileName:** Filename of the original digital file name
- **Extension:** File extension of email or non-email document
- **NativeLink:** Path and filename to produced Native file
- **EmailSubject:** Subject line extracted from an email message
- **Title:** Title field extracted from the metadata of a non-email document
- **Author:** Author field extracted from the metadata of a non-email document
- **From:** From field extracted from an email message
- **To:** To or Recipient field extracted from an email message
- **Cc:** CC or Carbon Copy field extracted from an email message
- **BCC:** BCC or Blind Carbon Copy field extracted from an email message
- **DateSent:** Sent date of an email message (mm/dd/yyyy format)
- **TimeSent:** Sent time of an email message, with time zone set to UTC
- **DateCreated:** Date that a file was created (mm/dd/yyyy format)
- **TimeCreated:** Time that a file was created, with time set to UTC.
- **DateLastModified:** Last modification date of a non-email document
- **TimeLastModified:** Last modification time of a non-email document
- **DocType:** Description of the type file for the produced record (*e.g.*, Microsoft Word file).
- **Path:** Original source file path for the record produced.
- **Fingerprint:** MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume:** Identifies production media deliverable
- **ExtractedText:** File path to Extracted Text/OCR File
- **Redacted:** "Yes," for redacted documents; otherwise, blank
- **HiddenContent:** Yes/No to indicate if image produced should show any hidden data
- **HiddenType:** To identify the type of hidden data (e.g., comments, hidden sheets, hidden slides, speaker notes, tracked changes) the produced image is supposed to show.
- **Confidentiality:** Text of confidentiality designation, if any.

5. **HARDCOPY (PAPER) DOCUMENTS METADATA FIELDS:**

- **BegBates:** Beginning Bates Number
- **EndBates:** Ending Bates Number
- **BegAttach:** Beginning Bates number of the first document in an attachment range
- **EndAttach:** Ending Bates number of the last document in attachment range
- **Custodian:** Name of the Custodian of the File(s) Produced- Last Name, First Name format
- **ProdVolume:** Identifies production media deliverable.
- **Redacted:** "Yes," for redacted documents; otherwise, blank
- **Confidentiality:** Text of confidentiality designation, if any.

6. **CONFIDENTIALITY DESIGNATIONS:** Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file. For native files, confidentiality designations will be endorsed on the lower left corner of all slip sheets inserted for native files.

7. **PARENT-CHILD RELATIONSHIPS:** Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to No. 4 above. Moreover, embedded or hyperlinked data (except logos, letterheads or backgrounds) on a file shall be treated as attachments.

8. **DYNAMIC FIELDS:** Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

9. **ENGLISH LANGUAGE:** To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

10. **ENCRYPTED FILES:** The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can

be reasonably unencrypted. The Producing Party may alternatively provide a working password for each encrypted file.

11. **ARCHIVE FILE TYPES:** Archive file types (*e.g.*, .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

12. **HIDDEN CONTENT AND TRACK CHANGES:** Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged if the file is produced as an image.

13. **PRODUCTION NUMBERING:** The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

14. **FILES PRODUCED IN NATIVE FORMAT:** Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation, and ending with the appropriate file extension. The original file name will be identified in the Load File. For each native file produced, the production will include a TIFF image slip sheet indicating the production number of the native file and the confidentiality designation, if any, and state "File Provided Natively."

15. **PRODUCTION MEDIA:** Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.