Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

D. Greg Blankinship (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
Telephone:  914-298-3290
Facsimile:   914-522-5561
*gblankinship@fbfglaw.com*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| INES BURGOS and MONGKOL MAHAVONGTRAKUL, individually and on behalf of other similarly situated individuals,<br><br>                                    Plaintiffs,<br><br>          v.<br><br>SUNVALLEYTEK INTERNATIONAL, INC.,<br><br>                                    Defendant. | Case No. 4:18-cv-06910-HSG<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 2, 4th Floor<br>Date: August 20, 2020<br>Time: 2:00 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 20, 2020, at 2 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S. Gilliam, Jr., presiding, Plaintiffs Ines Burgos and Mongkol Mahavongtrakul ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) appointing Plaintiffs as Class Representatives and the firms of Finkelstein, Blankinship, Frei-Pearson & Garer, LLP ("FBFG") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Class Counsel; (ii) granting final approval of the proposed Settlement[1] with Defendant Sunvalleytek International, Inc. ("Defendant" or "Sunvalleytek"); (iii) awarding attorneys' fees and expenses in the amount of $313,000.00 and $20,000, respectively; (iv) granting service awards to Plaintiffs in the amount of $5,000.00 each.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of D. Greg Blankinship in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Expenses, and Service Awards, dated May 6, 2020 ("Blankinship Declaration"), and the exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

---

[1] All capitalized terms are defined in the Joint Stipulation of Settlement ("Settlement" or "Stipulation"), dated May 6, 2020, unless otherwise noted.

1
2

## TABLE OF CONTENTS

Page

I.  BACKGROUND ...................................................................................................... 1

II.  SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT .............................. 3

III.  THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ..... 5

    A.  The Settlement Class Satisfies Rule 23(a) .............................................. 6

        1.  The Class Is So Numerous That  Joinder Of All Members Is Impracticable............................................................................... 6

        2.  There Are Questions Of  Law Or Fact Common To The Class.................. 7

        3.  Plaintiffs' Claims Are  Typical Of The Claims Of The Class. .................. 8

        4.  Plaintiffs Will Fairly And  Adequately Protect The Interests Of The Class. ................................................................................... 8

        5.  Ascertainability Is Not A Barrier To Certifying The Proposed Settlement Class. ...................................................................... 9

    B.  The Proposed Settlement Class Satisfies Rule 23(b)(2) ......................... 9

IV.  NOTICE TO THE CLASS IS NOT REQUIRED .................................................... 11

V.  THE COURT SHOULD APPROVE THE SETTLEMENT .......................................... 11

    A.  The Strength of Plaintiffs' Case............................................................ 12

    B.  The Risks Of Continued Litigation ...................................................... 13

    C.  The Risks of Maintaining A Class Action Status Throughout Trial.................... 14

    D.  The Extent of Discovery And Stage Of The Proceedings .................... 14

    E.  Counsels' Experience............................................................................. 15

    F.  Additional Factors................................................................................. 16

VI.  THE COURT SHOULD APPROVE PLAINTIFFS' COUNSELS' REQUEST FOR $313,000 IN ATTORNEYS' FEES ................................................................... 16

VII.  THE COURT SHOULD APPROVE REIMBURSEMENT OF EXPENSES ................. 20

VIII.  THE COURT SHOULD APPROVE PLAINTIFFS' SERVICE AWARDS.................... 21

IX.  CONCLUSION .................................................................................................. 22

27
28

# TABLE OF AUTHORITIES

**Page(s)**

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-01196, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) .................................................... 10

*Baby Neal for and by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ........................................................................................................... 10

*Banas v. Volcano Corp.*,
  47 F. Supp. 3d 957 (N.D. Cal. 2014) .......................................................................................... 17

*Bellinghausen v. Tractor Supply Co.*,
  303 F.R.D. 611 (N.D. Cal. 2014) ................................................................................................. 6

*Buccellato v. AT & T Operations, Inc.*,
  No. C10-00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................... 20, 21

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008) ............................................................................................... 10

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................................ 14

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................................ 12, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................................... 5

*De Leon v. Rocah USA, Inc., et al.*,
  No. 18-3725, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) ..................................................... 17

*DL v. District of Columbia*,
  302 F.R.D. 1 (D.D.C. 2013) ....................................................................................................... 11

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................................... 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...................................................................................................... 10

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ...................................................................................................... 7

*G. F. v. Contra Costa Cty.*,
  No. 13-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ............................................ Passim

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
  No. 13-4460, 2016 WL 6156076 (C.D. Cal. Aug. 16, 2016) ..................................................... 18

*Grannan v. Alliant Law Grp., P.C.*,
  No. 10-02803, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ...................................................... 15

1

## TABLE OF AUTHORITIES
### (cont.)

2

Page

3

4

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-2471, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ................................................. 12, 14

5

*Gray v. Golden Gate Nat'l Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011) ............................................................................................ 10

6

*Green v. Am. Express Co.*,
  200 F.R.D. 211 (S.D.N.Y. 2001) ............................................................................................ 11

7

8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................... 8, 12, 17

9

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...................................................................................................... 20

10

11

*Harris v. Vector Marketing Corp.*,
  No. C-08-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .................................................. 21

12

13

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) .............................................................................................. 9

14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................... 12

15

16

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ............................................................................................ 10

17

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................................................. 18

18

19

*In re HP Power Plug and Graphic Card Litig.*,
  No. C06-2254 RMW, 2008 WL 2697192 (N.D. Cal. Jul. 7, 2008) ......................................... 19

20

*In re Magsafe Apple Power Adapter Litig.*,
  No. 09-1911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ...................................................... 17

21

22

*In re Myford Touch Consumer Litig.*,
  No. 13-03072, 2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) ................................................. 19

23

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) .................................................................................... 7

24

25

*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................... 15

26

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
  No. 07-1841, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) .............................................. 13, 14

27

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) .............................................................................................. 5

28

**TABLE OF AUTHORITIES**
(cont.)

Page

*In re Yahoo Mail Litig.*,
 308 F.R.D. 577 (N.D. Cal. 2015) ............................................................... 9

*Jermyn v. Best Buy Stores, L.P.*,
 No. 08 Civ. 214, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................. 11

*Jordan v. Multnomah Cty.*,
 815 F.2d 1258 (9th Cir. 1987) ................................................................ 17

*Kim v. Space Pencil, Inc.*,
 No. 11-03796, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .............................. 16

*Kumar v. Salov N. Am. Corp.*, No.,
 No. 14-2411, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ............................... 8, 9

*Lazarin v. Pro Unlimited, Inc.*,
 No. 11-03609, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ............................... 14

*Lealao v. Beneficial California, Inc.*,
 82 Cal. App. 4th 19 (2000) ................................................................ 16

*Lilly v. Jamba Juice Co.*,
 No. 13-02998, 2015 WL 2062858 (N.D. Cal. May 4, 2015) ........................... Passim

*Linquist v. Bowen*,
 633 F. Supp. 846 (W.D. Mo. 1986) .......................................................... 11

*Mamula v. Satralloy, Inc.*,
 578 F. Supp. 563 (S.D. Ohio 1983) ......................................................... 11

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ................................................................. 7

*McCrary v. Elations Co., LLC*,
 No. 13–00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................................ 9

*Meister v. Regents of Univ. of California*,
 67 Cal. App. 4th 437 (1998) ................................................................. 16

*Miller v. Wise Co., Inc.*,
 No. 17-0616, 2020 WL 1129863 (C.D. Cal. Feb. 11, 2020) ............................ 17, 20

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
 No. 17-02911, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ............................ 12, 13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
 287 F.R.D. 590 (C.D. Cal. 2012) ............................................................. 7

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) ................................................................ 11

# TABLE OF AUTHORITIES
## (cont.)

**Page**

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................................ 7

*Penland v. Warren Cty. Jail*,
   797 F.2d 332 (6th Cir. 1986) .......................................................................... 11

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-07098, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ........................ 18

*Ries v. Ariz. Bevs. U.S. LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ..................................................................... 6

*Rodriguez v. Bumble Bee Foods, LLC*,
   No. 17-2447, 2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) ........................... 21

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ....................................................................... 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................... 13

*Rose v. Bank of Am. Corp.*,
   No. 11-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................ 18

*Stathakos V. Columbia Sportswear Company, et. al.*,
   No. 15-04543, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018) .................. 11, 12, 13, 16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................... 5, 21

*Stevens v. Safeway Inc.*,
   No. 05-1988, 2008 WL 11496497 (C.D. Cal. Feb. 25, 2008) ........................ 14

*Vasquez, et al. v. Kraft Heinz Food Co.*,
   No. 16-2749, 2020 WL 1550234 (S.D. Cal. Apr. 1, 2020) ............................ 17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................... 16, 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 6, 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ......................................................................... 5

*Yeagley v. Wells Fargo & Co.*,
   365 F. App'x 886 (9th Cir. 2010) .................................................................. 17

**Statutes**

Cal. Bus. & Prof. Code § 17500 ............................................................................ 2

NOTICE OF MOT. AND MOT. FOR ATTY FEES AND EXPENSES; MPA ISO THEREOF

# TABLE OF AUTHORITIES
### (cont.)

**Page**

Cal. Bus. & Prof. Code §§ 17200-17210 ...........................................................................2

Cal. Civ. Code §§ 1750-1785.............................................................................................2

**Rules**

Federal Rule of Civil Procedure 23..........................................................................Passim

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs Ines Burgos ("Burgos") and Mongkol Mahavongtrakul ("Mahavongtrakul") (collectively, "Plaintiffs"), on behalf of the class (the "Class"), submit this Memorandum of Law in support of their motion for approval of a proposed class action settlement, an award of attorneys' fees and expenses, and for Plaintiffs' service awards in the above-captioned action (the "Litigation").

The proposed settlement (which provides for injunctive relief only) warrants this Court's approval. The settlement is the first of its kind in that it requires Defendant Sunvalleytek International, Inc. ("Sunvalleytek" or "Defendant") to change the way it labels every power bank it sells in a manner that provides consumers with the information they need to make informed purchasing decisions. As Defendant has repeatedly claimed, the manner in which it labels its power banks is consistent with many other power bank sellers in the U.S. market. Approval of this settlement and the ensuing injunctive relief obtained though Plaintiffs and their counsels' diligent efforts may well be the first step in achieving widespread changes in the power bank market that will assist consumers everywhere.[2]

## I.   <u>BACKGROUND</u>

Under the RAVPower label, Sunvalleytek manufactures, markets, and distributes for sale nationwide power banks ("Power Banks") that consumers use to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and cellphones. First Am. Compl. ("FAC" or "Complaint"), ¶ 3 (Dkt. No. 20). The capacity of Power Banks is measured in milliampere-hours ("mAh"). *Id.* The amount of mAh available to charge PEDs controls how frequently a consumer may charge their PEDs and how much power is available to the consumer for each charge. *Id.* ¶ 3. Therefore, this information is essential to consumers' purchasing

---

[2] Because Plaintiffs only ask the Court to certify a settlement class under Rule 23(b)(2), and because class members do not release any claims or are otherwise bound in any way by the Settlement, this Court need not hold a hearing before determining whether to approve it (although Plaintiffs are of course ready and willing to participate in any hearing the Court chooses to set). *Compare* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added) *with* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court *must* direct to class members the best notice that is practicable…") ((emphasis added).

decisions, and Defendant prominently displays the mAh of its Power Banks on the Power Banks' packaging and on Amazon.com listings.  *Id.*

Plaintiffs allege that the Products' actual capacities are substantially lower than what Sunvalleytek represents.  *Id.* ¶ 19.   Plaintiffs support these allegations with results from a skilled and experienced testing company.  *Id.*  In fact, Defendant bases its mAh representations, not on the mAh its Power Banks are capable of delivering to recharge PEDs, but on the internal battery cells contained within a Power Bank.  *See* Blankinship Decl. ¶¶ 7-9.[3]  Because the internal circuitry in a Power Bank uses power that cannot be used to recharge a PED, and owing to voltage conversion losses, a Power Bank is incapable of delivering all of the internal battery capacity.  *Id.* ¶ 9.  Plaintiffs therefore allege that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells that have that mAh capacity.

Accordingly, on November 14, 2018, Plaintiffs filed a class action complaint against Defendant, asserting violations of the California Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"); violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; violations of the New York General Business Law New York ("GBL") §§ 349, 350; violations of materially identical state consumer protection statutes; breach of express warranty; and unjust enrichment.  Compl. ¶¶ 38-114.

The Litigation was hard fought.  The Parties engaged in substantial discovery, serving and responding to interrogatories, requests for production, and requests for admission.  In addition, Defendant submitted to a Rule 30(b)(6) deposition of Allen Fung, a General Manager for Sunvalleytek.  Before settlement, both parties had scheduled additional depositions of potential witnesses.  Plaintiffs reviewed Defendant's production, consisting of thousands of pages of documents and substantial data, and the Parties conferred multiple times.  Plaintiffs also conferred with experts concerning the merits of the case.  The parties participated in a mediation before Mark LeHocky on July 9, 2019 (Dkt. No. 43).  While they were unable to reach agreement on a

---

[3] A Power Bank is comprised of internal rechargeable battery cells and the circuitry required to safely convert battery voltage for PED use.

1   proposed settlement at that time, they were able to subsequently reach a proposed settlement for

2   the Court's consideration.

3   **II.      SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT**

4          Plaintiffs seek final approval of the Settlement.  Both Plaintiffs and Defendant

5   (collectively, "the Parties") support implementation of this agreement, although, as noted below,

6   they disagree on the amount of attorneys' fees that the Court should award to Plaintiffs' Counsel.

7          The Settlement requires that Defendant substantially change the way it markets Power

8   Banks with respect to capacity.  Defendant must:

9          1.    Change Power Bank labels to say the words "battery capacity" in

10               conjunction with the mAh number (where the mAh number is the sum of

11               the nominal rated capacity of the internal battery cells of the Power Bank);

12         2.    Change the user guide specifications to say the words "battery capacity" in

13               conjunction with the mAh number (where the mAh number is the sum of

14               the nominal rated capacity of the internal battery cells of the Power Bank);

15         3.    Change the product description in the Amazon listings to convey that the

16               specified mAh is the sum or total of the nominal rated capacity of the

17               internal battery cells;[4] and

18         4.    Change the bullet points of the Amazon listing to say "xxxx mAh internal

19               battery capacity" or "internal battery capacity xxxx mAh" (where xxxx

20               represents the number that is the sum of the nominal rated capacity of the

21               internal battery cells in the power banks.).

22         This is an exceptional achievement, resulting in the corrective action anticipated by the

23   Complaint without causing the Parties to incur the immeasurable expense and risks associated

24   with trial and appeal and the resulting use of scarce judicial resources.  It requires Defendant to

25   modify the allegedly false product labels, user guide specifications, and product descriptions in

26   Amazon listings to better convey that the displayed mAh reflects the internal battery capacity

27   contained in a Power Bank.  Indeed, Defendant has always contended that the way in which it

28   [4] The vast majority of RavPower Power Banks are sold on Amazon.com.  Blankinship Decl. ¶ 3.

labels and markets its Power Banks is consistent with widespread industry practice.  Plaintiffs and their counsel have therefore achieved a landmark agreement that may well help to establish a more fair market for Power Banks in which consumers are provided with true and accurate information regarding Power Bank capacity.  Thus, the proposed Settlement offers substantial benefits to all consumers in the market for Power Banks and avoids the delay, expense, and risks inherent in litigating claims through trial and appeal.

The Parties also request that the Court approve the payment of a $5,000 service award to each Plaintiff for the time and effort spent assisting the prosecution of the action on behalf of the Class.  Plaintiffs demonstrated an understanding of both the basis of the claims and the role of a class representative.  They conferred with Plaintiffs' Counsel concerning the status of the Litigation, Complaint and amendments thereto, discovery responses, and the Settlement.  They responded to written discovery requests, and produced documents relating to their purchases of Defendant's Products.  Finally, the requested service awards, like all other relief sought in the instant motion, was subject to arm's length negotiation and is comparable to other awards in other class actions in this Circuit.

While the Parties agree that the Court should issue an award of attorneys' fees to Plaintiffs' Counsel, they disagree as to the amount.  Plaintiffs' Counsel have agreed not to request that the Court award more than $315,000, while Defendant has agreed not to request that the Court award less than $45,000.  The amount of attorneys' fees to be awarded is the only dispute the Parties have with respect to the Settlement.  As discussed below, Plaintiffs' Counsels' request for $313,000 ($2000 less than they may request under the Settlement) is amply supported by the remarkable result achieved and by FBFG's lodestar (which is $313,001.50, an amount that does not account for the efforts of Plaintiffs' other counsel, Kaplan Fox and Turk and Strauss LLP ("Turk Strauss")).

Furthermore, reimbursement of reasonable expenses in the amount of $20,000 is warranted, particularly given that FBFG alone incurred $20,084.65 in expenses.  Defendant has agreed not to object to an award of expenses up to $20,000.

The Settlement was the product of arm's length negotiations aided by an independent

1  mediator and conducted by experienced counsel who obtained extensive discovery in the action

2  and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and

3  defenses asserted, the potential to achieve a more fair marketplace, and the fairness of the

4  Settlement.

5       Notably, the Settlement in no way limits the ability of class members to seek monetary

6  relief.  The proposed Order and Settlement only prohibit Plaintiffs, and not members of the

7  Settlement Class, from pursuing individual monetary claims against Defendant.  Plaintiffs

8  respectfully submit that the Court should approve the Settlement because it provides broad

9  injunctive relief while expressly preserving the rights of the Settlement Class to seek monetary

10  relief if they so choose.

11  **III.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

12       Plaintiffs respectively request that the Court certify the proposed class under Rule

13  23(b)(2) for settlement purposes.  There is no question that "Parties may settle a class action

14  before class certification and stipulate that a defined class be conditionally certified for settlement

15  purposes." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)

16  (citing *Molski v. Gleich*, 318 F.3d 93d 937 (9th Cir. 2003)).  In fact, "[t]he Ninth Circuit

17  maintains a 'strong judicial policy' that favors the settlement of class actions," even though

18  "a class action may not be settled without court approval." *G. F. v. Contra Costa Cty.*, No. 13-

19  03667, 2015 WL 4606078, at *8 (N.D. Cal. July 30, 2015) (quoting *Class Plaintiffs v. City of*

20  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  Indeed, "rejection of a settlement creates not only

21  delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved

22  for the putative class put at risk."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

23       Under Rule 23(a), a party intending "to certify a class must demonstrate that '(1)

24  the class is so numerous that joinder of all members is impracticable; (2) there are questions of

25  law or fact common to the class; (3) the claims or defenses of the representative parties are typical

26  of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

27  protect the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

28  1172 (9th Cir. 2010).  As set forth in greater detail below, a potential fifth factor, ascertainability,

1   does not apply to class actions under Rule 23(b)(2).  Rule 23(b)(2) is satisfied if "'the party

2   opposing the class has acted or refused to act on grounds that apply generally to the class, so that

3   final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

4   whole [.]'"  *Contra Costa*, 2015 WL 4606078, at *11 (quoting Fed. R. Civ. P. 23(b)(2); citing

5   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

6       Here, Plaintiffs seek certification of the following settlement class pursuant to Rule

7   23(b)(2): All consumers who will or might purchase a Power Bank in the United States.  Because

8   all the certification requirements for settlement purposes are met and Defendant consents to

9   certification of a class action for settlement purposes, Plaintiffs respectfully request that the Court

10  conditionally certify the action.

11      **A.**   **The Settlement Class Satisfies Rule 23(a)**

12      As previously noted, there are five Rule 23(a) requirements (numerosity, commonality,

13  typicality, adequacy, and ascertainability).  The proposed settlement class meets these

14  requirements.

15          **1.**   **The Class Is So Numerous That**
                    **Joinder Of All Members Is Impracticable.**

16

17      Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members

18  is impracticable."  "No specific number is required, although there is a presumption that a class

19  with more than 40 members is impracticable to require joinder."  *Ries v. Ariz. Bevs. U.S.*

20  *LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Bellinghausen v. Tractor Supply Co.*, 303

21  F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general

22  knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.");

23  *Contra Costa*, 2015 WL 4606078, at *9 (in certifying a class under Rule 23(b)(2), finding

24  numerosity because "the class contains at least 40").  Because Defendant has sold thousands of

25  Power Banks to thousands of consumers (Blankinship Decl. ¶ 3), the proposed settlement class is

26  sufficiently numerous.

27

28

1

**2.      There Are Questions Of
Law Or Fact Common To The Class.**

2

3      Rule 23(a)(2) provides that there must be "questions of law or fact common to the class"

4   for a suit to be certified as a class action.  Fed. R. Civ. P. 23(a)(2).

5      Generally, courts have liberally construed the commonality requirement to require just

6   *one* issue common to all class members.  "[F]or purposes of Rule 23(a)(2)[,] even a single

7   common question will do."  *Wal-Mart*, 564 U.S. at 359; *see also Mazza v. Am. Honda Motor Co.*,

8   666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of

9   law or fact.").  Thus, "[w]here the circumstances of each particular class member vary but retain a

10   common core of factual or legal issues with the rest of the class, commonality exists."  *Parsons v.*

11   *Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (*quoting Evon v. Law Offices of Sidney Mickell*, 688 F.3d

12   1015, 1029 (9th Cir. 2012)).  This provision is easily satisfied, especially in consumer protection

13   class actions where, as in the present case, all class members were exposed to similar false or

14   misleading statements regarding a company's products.  *See, e.g.*, *In re NJOY, Inc. Consumer*

15   *Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015). ("There is no question that

16   all class members were exposed to the product packaging; this suffices to show commonality.").

17   Minor differences in the offending representations do not preclude certification.  *See Negrete v.*

18   *Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 602 (C.D. Cal. 2012) ("The minor differences in

19   the language of these alleged misrepresentations may present individual issues, but any such

20   issues 'go to predominance under Rule 23(b)(3), not to whether there are common issues under

21   Rule 23(a)(2).'") (quoting *Mazza*, 666 F.3d at 589).

22      Here, all class members were exposed to the same false or misleading statement -- that the

23   power banks produce a specific mAh capacity, when, in fact, the actual mAh capacity is

24   significantly lower.  This results in many common questions of fact or law, including: whether

25   Defendant misrepresents Power Banks' mAh capacity; whether Defendant's conduct was unfair

26   or deceptive in violation of state consumer protection statutes; whether Defendant's

27   representations constitute a breached express warranty; whether Defendant is unjustly enriched;

28   whether class members will be harmed by Defendant's actions; and whether future

1   misrepresentations can be prevented on a uniform basis.

2       In short, "[t]he focus of this action -- whether the []representation []misle[ads] reasonable

3   consumers -- is common to all class members."  *Kumar v. Salov N. Am. Corp.*, No. 14-2411, 2017

4   WL 2902898, at *6 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018).

5   Accordingly, commonality exists.

6                       **3.      Plaintiffs' Claims Are**
                              **Typical Of The Claims Of The Class.**
7

8       Rule 23(a)(3) provides that the claims of the Plaintiffs must be "typical of the claims of …

9   the class."  Fed. R. Civ. P. 23(a)(3).  "Under this rule's permissive standards, representative

10  claims are typical if they are reasonably co-extensive with those absent class members; they need

11  not be substantially identical."  *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150

12  F.3d 1011, 1020 (9th Cir. 1998)).  In the context of a Rule 23(b)(2) class action, typicality is

13  shown where, "[l]ike the proposed class representatives, all members of the proposed Settlement

14  Class are being or will be subjected to the systematic policies and practices … and have or will

15  likely suffer injuries as a result."  *Contra Costa*, 2015 WL 4606078, at *10.

16      Here, the claims of Plaintiffs and all class members arise out of a singular course of

17  conduct, namely uniform false and deceptive representatives regarding mAh capacity made in

18  connection with the sale of Power Banks.  Class members' claims are also premised on the same

19  theories of liability -- that Defendant's conduct constitutes violations of consumer protection

20  laws, breaches of express warranty, and unjust enrichment.   Under such circumstance,

21  certification is warranted.  *See Kumar*, 2017 WL 2902898, at *6. "[Plaintiffs] and

22  other consumers around the country were all exposed to the same product and the same alleged

23  misrepresentations, making [them] typical of class members nationwide."

24                      **4.      Plaintiffs Will Fairly And**
                             **Adequately Protect The Interests Of The Class.**
25

26      Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the

27  interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Two questions must be considered in this

28  determination: (1) do the named plaintiffs and their counsel have any conflicts of interest with

other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Contra Costa*, 2015 WL 4606078, at *10 (internal citations omitted).

Here, Plaintiffs have adequately represented the Settlement Class, and they will continue to do so. There exists no conflict, and, in any event, "[c]lass representatives have less risk of conflict with unnamed class members when they seek only declaratory and injunctive relief." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 160 (N.D. Cal. 2015). Moreover, Plaintiffs have worked diligently with counsel in their preparation of pleadings and responding to length requests for discovery. There is no allegation that, in any of these efforts, Plaintiffs were anything but credible.

Likewise, Plaintiffs' Counsel are qualified and experienced in prosecuting complex class actions nationwide, in both state and federal courts, including customer protection class actions against Power Bank distributors like Defendant. Blankinship Decl. ¶¶ 13-17, Exhibit 2; Decl. of Laurence D. King, dated May 5, 2020 ("King Decl."), ¶ 9, Exhibit C; Decl. of Sam Strauss, dated May 6, 2020 ("Strauss Decl."), ¶ 3-4. Thus, Plaintiffs' Counsel are capable of fairly and adequately representing the Class.

### 5.   Ascertainability Is Not A Barrier To Certifying The Proposed Settlement Class.

"The ascertainability requirement does not apply to Rule 23(b)(2) actions." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015). To the extent that one might apply, the class definition sufficiently satisfies that ascertainability requirement. "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co.,* LLC, No. 13–00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (collecting cases). Here, all plaintiffs need to know to determine if they are in the proposed settlement class is whether they may purchase a RavPower-branded Power Bank.

### B.   The Proposed Settlement Class Satisfies Rule 23(b)(2)

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) is "'almost automatically satisfied in actions primarily seeking injunctive relief.'"  *Hernandez*, 305 F.R.D. at 151 (citing *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994))); *see, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008)).

To satisfy Rule 23(b)(2), Plaintiffs need only show that Defendant's "policies and practices … constitute shared grounds for all of the individuals in the proposed class, demonstrating that Defendants have acted or refused to act on grounds that apply generally to the class."  *Contra Costa*, 2015 WL 4606078, at *11.  Defendant uniformly labelled and advertised its Power Banks by representing that they had a certain mAh when they did not.  Blankinship Decl. ¶ 3, Exhibit 5.  A single injunction requiring Defendant to clarify its mAh representation to prevent consumer confusion applies to the entire class, rendering certification under Rule 23(b)(2) appropriate.  *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-01196, 2018 WL 4181896, at *12 (N.D. Cal. Aug. 31, 2018) ("The … question, then, is whether 'a single injunction … would provide relief to each member of the class.'  Based on the alleged mislabeling, the Court finds that it would, and grants certification of all four classes under Rule 23(b)(2).") (citing *Dukes*, 564 U.S. at 360).

Certifying this class under Rule 23(b)(2) will redress Defendant's misleading policies and encourage a more fair marketplace for all consumers.  Accordingly, Rule 23(b)(2) is satisfied.[5]

---

[5] That Plaintiffs' Complaint pled a Rule 23(b)(2) and a Rule 23(b)(3) class is of no moment because Plaintiffs are only now seeking certification of Rule 23(b)(2) settlement class.  *Cf. Ang*, 2018 WL 4181896, at *11) ("Defendant appears to argue that Plaintiffs' attempt to certify a damages class under Rule 23(b)(3) bars certification under Rule 23(b)(2).  The Court, however, reads *Algarin* and *Ellis* to preclude Rule 23(b)(2) certification where the primary relief sought *under Rule 23(b)(2)* is monetary—not where a plaintiff seeks certification under both Rule 23(b)(2) and (b)(3).")  (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (noting that "in Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation") (citation and internal quotation marks omitted); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.")").

IV.    **NOTICE TO THE CLASS IS NOT REQUIRED**

Because this action will be certified under Rule 23(b)(2), notice is unnecessary.  "In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."  *Stathakos v. Columbia Sportswear Co.*, No. 15-04543, 2018 WL 582564 at *3 (N.D. Cal. Jan. 25, 2018) (citing *Penland v. Warren Cty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986); *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013); *Jermyn v. Best Buy Stores, L.P.*, No. Civ. 214, 2012 WL 2505644, *12 (S.D.N.Y. June 27, 2012); *Green v. Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. 1986); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio 1983)).  As Judge Rogers explained:

> Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2).  Because of this, courts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members and there is no option for class members to opt out . . . Here, the terms of the Agreement provide for injunctive relief only and further expressly preserve the rights of the class to bring claims for monetary relief.

*Id.,* 2018 WL 582564, at *3-4 (quotations omitted).  The Settlement here also explicitly provides that class members do not release any monetary claims they might have and it expressly preserves the rights of the class to bring claims for monetary relief.  Settlement at 9.

Therefore, Plaintiffs respectfully request that the Court approve the settlement without requiring that notice be issued to class members.  *See Lilly v. Jamba Juice Co.*, No. 13-02998, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) (approving of a class action settlement under Rule 23(b)(2) and finding notice unnecessary).

V.    **THE COURT SHOULD APPROVE THE SETTLEMENT**

As previously noted, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."  *Contra Costa*, 2015 WL 4606078, at *8 (quoting *Class Plaintiffs*, 955 F.2d at 1276).  This applies "particularly where complex class action litigation is concerned."  *Class Plaintiffs*, 955 F.2d at 1276 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  Courts asked to approve a class action settlement determine whether it is fair, reasonable, and adequate.  "In making this

determination, a court typically considers the following factors: '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'"  *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-02911, 2019 WL 343472, at *3 (N.D. Cal. Jan. 28, 2019) (approving Rule 23(b)(2) injunctive relief only settlement and quoting *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)).  "The court need not consider all of these factors, or may consider others." *Id.* (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).[6]  *See also Stathakos,* 2018 WL 582564, at *4 *(approving injunctive relief only class settlement based on same factors and citing Hanlon,* 150 F.3d at 1026).

A settlement involving injunctive relief is fair, adequate, and reasonable where the parties' injunctive relief settlement "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (approving injunctive relief only settlement).  The Settlement here does precisely that.

## A.   The Strength of Plaintiffs' Case

To prevail on their claims, Plaintiffs would have to prove that a reasonable consumer would be deceived by Defendant's mAh representations.  As Judge Rogers noted, "any time that liability hinges on reasonableness, a favorable verdict cannot be certain.  Because of the

---

[6] As Magistrate Judge Corley noted, "[i]n considering whether a class action settlement agreement is fair, adequate, and reasonable courts typically also examine whether the settlement agreement was the result of collusion between the parties. *Bluetooth*, 654 F.3d at 947.  However, the Bluetooth collusion analysis does not apply where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims." *Moreno,* 2019 WL 343472 at *3 n.2 (citing cases).  Of course, the proposed Settlement here is not the result of collusion.  To the contrary, the Parties used an experienced attorney as part of the Court's mediation program, and even then they were unable to resolve this case for many months after that mediation.

uncertainty of the recovery or injunctive relief after trial, this factor weighs in favor of approval." *Stathakos*, 2018 WL 582564, at *5; *Lilly*, 2015 WL 2062858, at *3 (same).

The novel nature of this litigation renders Plaintiffs' case all the more challenging. Prior to November 2018 (the same month this Litigation was commenced), no consumer had ever brought a proposed class action alleging that a defendant misrepresented the mAh capacity of its power banks.[7] This case, filed on November 14, 2018, was the first such case ever filed in the Ninth Circuit. Courts routinely recognize that "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery." *Lilly*, 2015 WL 2062858, at *3 (approving injunctive relief settlement and quoting *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. 07-1841, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011)). To date, no factfinder has addressed whether a reasonable consumer would be deceived by mAh representations on Power Banks, and no court has addressed whether a class should be certified under Rule 23 in any class action against a Power Bank manufacturer, distributor, or seller. This factor augers in favor of approving the Settlement.

## B.     The Risks Of Continued Litigation

The risks, expense, complexity, and likely duration of litigation also weigh in favor of approving the settlement, because the proposed injunctive relief would promptly result in relabeling Power Banks, and further litigation would be inevitable absent a settlement agreement. *See Lilly*, 2015 WL 2062858, at *3 (citing *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir. 2009)). In *Lilly*, a consumer protection class action in the Northern District, this factor weighed in favor of approving a settlement solely involving injunctive relief, because the "settlement will result in complete relabeling of the challenged products." *Id.* Here, as in *Lilly*, current and future Power Banks will reflect the agreed-upon modifications, while "continued litigation could not result in

---

[7] In November 2018, other plaintiffs, represented by FBFG, filed four cases similar to the one at bar: *Mancuso v. RFA Brands LLC, d/b/a MyCharge*, No. 18-06807, Dkt. No. 1, Complaint, filed November 13, 2018 (W.D.N.Y.); *Mazzone v. Topstar*, No. 18-06989, Dkt. No. 1, Complaint, filed November 19, 2018 (N.D. Cal.); *Mahavongtrakul v. Inland Products, Inc.*, No. 18-07261, Dkt. No. 1, Complaint, filed November 30, 2018 (N.D. Ca); and *Hester v. Walmart, Inc.*, No. 18-05225, Dkt. No. 1. Complaint, filed November 14, 2018 (W.D. Ark.).

any greater injunctive relief to the class and would only deprive the class of immediate relief." *Id.* Accordingly, this factor supports approval of the Settlement.

### C. The Risks of Maintaining A Class Action Status Throughout Trial

Courts also consider whether uncertainty remains as to class certification. Here, where Plaintiffs have yet to move for class certification, there is a substantial risk that the Court may not certify the class. *See Stevens v. Safeway Inc.*, No. 05-1988, 2008 WL 11496497, at *6 (C.D. Cal. Feb. 25, 2008) ("Given the possibility that the court might have granted defendants' motion, and decertified the class, this factor weighs in favor of approval of the proposed settlement."); *Lazarin v. Pro Unlimited, Inc.*, No. 11-03609, 2013 WL 3541217, at *7 (N.D. Cal. July 11, 2013) ("Named Plaintiffs contend that the claims in this case are appropriate for class certification, but Defendants would certainly have an argument against certification in the absence of this Settlement."); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) ("The scope and detail of the injunctive relief agreed upon in the settlement would also be at risk if the case proceeded to trial."). On the other hand, "the class settlement successfully removes these risks from the class members...." *Wells Fargo*, 2011 WL 3352460, at *6; *see, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ("Because a risk of decertification has been acknowledged by both parties, this factor slightly favors settlement."). Here, this factor also favors settlement.

### D. The Extent of Discovery And Stage Of The Proceedings

This factor favors settlement if "Plaintiffs conducted an extensive amount of formal discovery prior to the settlement agreement." *Lilly*, 2015 WL 2062858, at *4. Here, Plaintiffs engaged in extensive, formal discovery. The Parties served and responded to interrogatories, requests for production, and requests for admission, and Plaintiffs deposed a corporate representative of Defendant under Rule 30(b)(6). Plaintiff also consulted with an expert who tested Defendant's Power Banks to verify that they did not have the capacity of producing the promised mAh. Thus, discovery in the case prior to settlement negotiations informed Plaintiffs' and Plaintiffs' Counsels' understanding of the case and the Parties' decision to settle. Plaintiffs

therefore have sufficiently developed an understanding of the strengths and weaknesses of the case. *Grannan v. Alliant Law Grp., P.C.*, No. 10-02803, 2012 WL 216522, at *7 (N.D. Cal. Jan. 24, 2012) (finding that the extent of discovery weighed in favor of granting approval of a settlement agreement where discovery consisted solely of the plaintiff subpoenaing documents, because "plaintiffs argue (and defendant does not oppose) that even this limited discovery gives them a clear view of the strengths and weaknesses of the case. While more extensive discovery could have been done, the information currently before the court suggests that the Settlement represents a substantial benefit to plaintiffs, especially when compared with the risks of further litigation.").

Accordingly, this factor also favors approval of the Settlement.

### E.    Counsels' Experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness," because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *Rodriquez*, 563 F.3d at 967 (quoting *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Thus, courts heavily consider the competence of counsel, which is demonstrated by "their experience in litigating similar consumer class actions." *Lilly*, 2015 WL 2062858, at *4.

Here, it is undisputed that Plaintiffs' Counsel are experienced in litigating similar consumer class actions. FBFG is a leading class action law firm. It regularly prosecutes consumer claims, and its attorneys are regularly appointed as class counsel in such actions. *See* Blankinship Decl. ¶¶ 13-17, Exhibit 2. Indeed, FBFG is currently prosecuting several different actions around the country alleging similar claims premised on misrepresentations regarding the mAh capacity of Power Banks from manufacturers, distributors, and seller of Power Banks. *See Hester v. Walmart, Inc.*, No. 18-05225 (W.D. Ark.); *Mancuso v. RFA Brands*, No. 18-0687 (W.D.N.Y.); *Hester v. Walmart, Inc.*, 18-05225 (W.D. Ark.); *Brady, et al. v. Anker Innovations Limited, et al.*, 18-11396; *Young, et al. v. Mophie, Inc.*, 18-00827 (C.D. Cal.); *Geske v. PNY Technologies, Inc.*, 19-05170 (N.D. Ill.). Kaplan Fox is also a nationally recognized law firm that

1   has extensive experience in complex class action litigation, as is Turk Strauss.  *See* King Decl. ¶¶

2   9, Exhibit C; Strauss Decl. ¶¶ 3-4.  Accordingly, the experience of counsel supports approval of

3   the Settlement.

4

5           **F.**    **Additional Factors**

6         While courts may consider the opinion of the government, this factor is not weighed

7   unless the government is a participant, which is not the case here.  *See Lilly*, 2015 WL 2062858,

8   at *5 ("[N]o government participant is involved, so the court does not weigh this factor.");

9   *Stathakos*, 2018 WL 582564, at * 6 (same).

10         Similarly, because notice is not necessary (as discussed below), "the reaction of the class

11   is not considered in weighing the fairness factors.  *Stathakos*, 2018 WL 582564, at *6; *Kim v.

12   Space Pencil, Inc.*, No. 11-03796, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) ("The final

13   factor, the reaction of class members is not relevant here because notice [sic] not required under

14   Federal Rule of Civil Procedure 23(e) and there is no binding effect on the Class nor is there a

15   release being provided.").  Here, because notice is not required, the final factor is not relevant to

16   this Court's decision.

17         Accordingly, and as set forth above, all the relevant factors favor approval of the

18   Settlement.

19   **VI.**    **THE COURT SHOULD APPROVE PLAINTIFFS' COUNSELS' REQUEST FOR $313,000 IN ATTORNEYS' FEES**

20        "In a certified class action, the court may award reasonable attorney's fees and

21   nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

22   When state substantive law applies, attorneys' fees are to be awarded in accordance with state

23   law.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  "California courts apply

24   the lodestar method in class actions governed by California law."  *Lilly*, 2015 WL 2062858, at *5

25   (citing *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000) (applying California

26   law); *Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448-49 (1998)).  Similarly,

27   under federal law, in "injunctive relief class actions, courts often use a lodestar calculation

28

1    because there is no way to gauge the net value of the settlement or any percentage thereof." *Lilly*,

2    2015 WL 2062858, at \*4.

3          The lodestar calculation consists of the multiplication of the number of hours reasonably

4    expended by a reasonable hourly rate.  *Hanlon*, 150 F.3d at 1029; *Yeagley v. Wells Fargo & Co.*,

5    365 F. App'x 886, 887 (9th Cir. 2010) (finding the lodestar method to be appropriate in

6    calculating attorney's fees where injunctive relief was sought and no common fund was created).

7          Here, pursuant to the Settlement, Plaintiffs' Counsel seek attorneys' fees in the amount of

8    $313,000.  While Defendant may disagree (as provided in the Settlement), Plaintiffs' Counsels'

9    fee request falls well within the range of class counsel fees approved in comparable cases.

10          FBFG's hourly rates are reasonable.  An hourly rate will be approved as long as "the

11    requested rates are in line with those prevailing in the community for similar services of lawyers

12    of reasonably comparable skill and reputation."  *Miller v. Wise Co., Inc*., No. 17-0616, 2020 WL

13    1129863, at \*9 (C.D. Cal. Feb. 11, 2020) (citing *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263

14    (9th Cir. 1987)).  Here, FBFG's hourly rates are consistent with prevailing rates in the community

15    of attorneys with similar levels of experience in complex commercial litigation.  *See Banas v.*

16    *Volcano Corp*., 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (finding rates ranging from $355 to

17    $1,095 per hour for partners and associates were within the range of prevailing rates in the

18    Northern District); *Miller*, 2020 WL 1129863, at \*9-10 (finding reasonable hourly rates of up to

19    $900 per hour for Class Counsel); *Vasquez v. Kraft Heinz Food Co.*, No. 16-2749, 2020 WL

20    1550234, at \*7 (S.D. Cal. Apr. 1, 2020) (finding reasonable rates of $200 per hour, $400 per hour,

21    and $900 for paralegals, junior attorneys, and experienced attorneys, respectively); *De Leon v.*

22    *Rocah USA, Inc.*, No. 18-3725, 2020 WL 1531331, at \*15 (N.D. Cal. Mar. 31, 2020) ("Mr.

23    Clark's standard litigation rate is $800 per hour … Clark Law Group attorneys Monique R.

24    Rodriguez (California Bar admission 2015), Andrea Torres-Figueroa (California Bar admission

25    2017), and Paige D. Chretien (California Bar admission 2018) also worked on this case with

26    hourly rates of $475, $415, and $395 per hour, respectively."); *In re Magsafe Apple Power*

27    *Adapter Litig.*, No. 09-1911, 2015 WL 428105, at \*12 (N.D. Cal. Jan. 30, 2015) ("In the Bay

28    Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to

- 17 -

$510, and for paralegals and litigation support staff from $150 to $240."); *Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *12 (N.D. Cal. Aug. 29, 2014) (finding reasonable partners rates between $350–$775 per hour; associates at $325–$525 per hour; and paralegal rates between $100–$305 per hour*); In re High-Tech Employee Antitrust Litig.*, No. 11-02509, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding reasonable senior attorneys' rates "from about $ 490 to $ 975" and more junior attorneys' rates "from about $ 310 to $ 800"); *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. 13-4460, 2016 WL 6156076, at *7 (C.D. Cal. Aug. 16, 2016) (finding reasonable hourly rates of up to $820 per hour); *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 WL 1746484, at *19-20 (C.D. Cal. Mar. 24, 2015) (approving as reasonable hourly rates ranging from $350 for the lowest-paid associate to $930 for the highest-paid partner).

As the declarations of Plaintiffs' Counsel set forth, FBFG's rates are commensurate with their level of expertise and experience and match the prevailing rates in the Northern District of California.  *See* Blankinship Decl. ¶ 18.

Indeed, FBFG has been awarded fees based on its standard hourly rates in numerous prior cases, including in California and the Ninth Circuit.  *See, e.g.*, *IN RE: Zappos.com, Inc., Customer Data Sec. Breach Litig.*, No. 3:12-cv-00325,  ECF No. 418 (D. Nev. Dec. 23, 2019) (approving fees including FBFG's hourly rates of $850 for partners, $350-$575 for associates, and $190 for professional staff); *Castillo, et al. v. Bank of the West*, No. CGC-16-551997 (Cal. Sup. Ct. Jul. 24, 2018); *St. Joseph Health Sys. Med. Info. Cases*, JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016); *Winstead v. ComplyRight, Inc.*, No. 1:18-cv-04990, ECF No. 101 (N.D. Ill. Oct. 7, 2019); *Hamlen v. Gateway Energy Svcs. Corp.*, No. 16-03526 (S.D.N.Y. 2019), Dkt. No. 141; *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, No. 13-3073 (S.D.N.Y. Nov. 1, 2017), Dkt. No. 132; *Villanueva v. Wells Fargo Bank*, N.A., No. 13-5429 (S.D.N.Y. Feb. 13, 2017), Dkt. No. 116; *Whittenburg v. Bank of America, N.A.*, No. 14-947 (S.D.N.Y. July 20, 2016), Dkt. No. 119.

Defendant may argue that this fee request is not justified by the work required to bring this case to its conclusion.  Not so.  Plaintiffs' Counsel worked efficiently and diligently in

pursuing this novel matter.  Below is a table identifying each FBFG attorney and paralegal who worked on the case, their billing rates, year of graduation from law school, and the total number of hours billed in prosecution of this Litigation:

| Attorney | Year of Graduation | Billing Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| D. Greg Blankinship (partner) | 2002 | $850 | 183.7 | $156,145 |
| Jean Sedlak (associate) | 2009 | $560 | 116.4 | $65,184 |
| Sara Bonaiuto (associate) | 2018 | $300 | 111.1 | $33.330 |
| Scott Terrell (associate) | 2013 | $450 | 125.85 | $56,632.50 |
| Evelyn Ozuna (paralegal) | N/A | $190 | 9 | $1,710 |

Total: $313,001.50

Attached as Exhibit 4 to the Blankinship Declaration is a table that summarizes the total time expended on various types of tasks by each attorney.

Moreover, the above totals underestimate the amount of work Plaintiffs' counsel devoted to this case for several reasons: 1) FBFG exercised its discretion to cut 20 hours from time originally billed to ensure that only time that was efficiently expended is counted; 2) Plaintiffs are not including the substantial time spent by Kaplan Fox or Turk Strauss attorneys, even though that work significantly aided in the prosecution of this action; and 3) Plaintiffs are not including more than 80 hours spent finalizing the settlement agreement and preparing this motion after the Parties executed a term sheet on February 26, 2020.

In addition, Plaintiffs' counsel are not seeking a multiplier on FBFG's lodestar even though they would be entitled to one given the novelty of this Litigation and the superlative result achieved by the Settlement.  *See In re HP Power Plug and Graphic Card Litig.*, No. C06-2254 RMW, 2008 WL 2697192 (N.D. Cal. Jul. 7, 2008) (awarding a 1.24 multiplier); *Vizcaino*, 290 F.3d at 1051 n. 6 (noting awards with multipliers are often issued); *In re Myford Touch Consumer Litig.*, No. 13-03072, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("The Ninth Circuit has

1   observed that lode star multipliers ranging from one to four are frequently awarded in complex

2   class action cases.); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463, 2011 WL 3348055,

3   at *2 (N.D. Cal. June 30, 2011) (awarding 4.3 multiplier).

4          Applying FBFG's hourly rates to the hours expenses yields a lodestar of $313,001.50, and

5   therefore an award of $313,000 is fair and reasonable.

6   **VII.   THE COURT SHOULD APPROVE REIMBURSEMENT OF EXPENSES**

7          Plaintiffs' Counsel also seek reimbursement of litigation expenses up to $20,000, which

8   Defendant has agreed not to contest.  Settlement at 11.  These expenses were reasonably incurred

9   and necessary to the prosecution of this Action.  *See* Blankinship Decl. ¶ 24, Exhibit 3.  In fact,

10  FBFG incurred $20,084, *id*, and Kaplan Fox incurred $1,159.32.  King Decl. Exhibit B.  An

11  attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket

12  expenses that would normally be charged to a fee-paying client."  *Harris v. Marhoefer,* 24 F.3d

13  16, 19 (9th Cir. 1994).  To support an expense award, Plaintiffs need only file an "itemized list of

14  their expenses by category and the total amount advanced for each category in order for the Court

15  to assess whether the expenses are reasonable."  *Lilly*, 2015 WL 2062858, at *6.  That itemized

16  list is attached as Exhibit 4 to the Blankinship Declaration.

17         In this Circuit, "reasonable expenses, [even] though greater than taxable costs, may be

18  proper."  *Harris*, 24 F.3d at 20.  Reimbursement of litigation expenses is warranted whenever

19  "[t]here is no showing or suggestion that the expenses incurred were excessive or unnecessary."

20  *Miller*, 2020 WL 1129863, at * 13.  Here, "all [expenses] are ones commonly and necessarily

21  incurred in the litigation of claims like those asserted in this action."  *Id.*; *Lilly*, 2015 WL

22  2062858, at *6 ("Roughly half of class counsel's expenses ($7,118.30) stemmed from mediation

23  fees, which the Court finds reasonable in light of the expert mediator hired to assist in settlement

24  negotiations and the successful result of the negotiations.  Similarly, the Court finds reasonable

25  the requested travel costs, document expenses, research costs, and filing fees.  Based on the

26  declarations of counsel, the Court awards the requested legal expenses of $14,326.87.").

27         Here, all the expenses were reasonable and necessary to the prosecution of this litigation

28  and are of the type that law firms typically bill to their clients and that courts typically approve

for reimbursement.  These expenses include travel related to court appearances, a mediation, and one deposition, research costs, and filing fees.  *See Rodriguez v. Bumble Bee Foods, LLC*, No. 17-2447, 2018 WL 1920256, at *8 (S.D. Cal. Apr. 24, 2018) ("Class Counsel's expenses include[d] filing fees, mailing costs, meals, airfare, and Uber transportation costs," and the Court found that Class Counsel's out-of-pocket costs were "reasonably incurred in connection with the prosecution of th[e] litigation, were advanced by Class Counsel for the benefit of the class, and should be reimbursed in full in the amount requested.").

## VIII.   THE COURT SHOULD APPROVE PLAINTIFFS' SERVICE AWARDS

Class Counsel respectfully request that the Court approve the payment of incentive awards to Plaintiffs Burgos and Mahavongtrakul in the amount of five thousand dollars ($5,000) each. Pursuant to the Settlement, Defendant has agreed to not object to Plaintiffs' request for these awards.  The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases.  "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59 (internal citation omitted).

"In this circuit … $5,000 is presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *see also Harris v. Vector* Marketing Corp., No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted).

Plaintiffs' request of $5,000 each should be granted.  Plaintiffs each reviewed, and discussed with Plaintiffs' Counsel, the pleadings and discovery demands and they assisted in responding to those requests.  Blankinship Decl. ¶ 13.  Plaintiffs also conferred with Class Counsel regarding the settlement negotiations, and always encouraged Class Counsel to obtain the best possible result for the absent class members.  *Id.*  These actions warrant an award of

1   attorneys' fees.

2

3   **IX.**   **CONCLUSION**

4          For all the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the

5   Court grant final approval of the Settlement, enter the accompanying proposed Final Approval

6   Order, and approve the requested attorneys' fees and incentive awards to be paid by Defendant.

7                                    Respectfully submitted,

8                                    **FINKELSTEIN, BLANKINSHIP,**
                                     **FREI-PEARSON & GARBER, LLP**
9
    DATED:  May 6, 2020              By:   /s/ *D. Greg Blankinship*
10                                              D. Greg Blankinship

11                                   D. Greg Blankinship (*pro hac vice*)
                                     One North Broadway, Suite 900
12                                   White Plains, New York 10601
                                     gblankinship@fbfglaw.com
13                                   Telephone: (914) 298-3290
                                     Facsimile: (914) 522-5561
14

15                                   **KAPLAN FOX & KILSHEIMER LLP**
                                     Laurence D. King (SBN 206423)
16                                   Mario M. Choi (SBN 243409)
                                     1999 Harrison Street, Suite 1560
17                                   Oakland, CA 94612
                                     Telephone:  415-772-4700
18                                   Facsimile:  415-772-4707
                                     *lking@kaplanfox.com*
19                                   *mchoi@kaplanfox.com*

20                                   *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28