UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INES BURGOS, et al., <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>SUNVALLEYTEK INTERNATIONAL, INC., <br><br>　　　　　Defendant. | Case No. 18-cv-06910-HSG <br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br>Re: Dkt. No. 48 |

　　　　Pending before the Court are Ines Burgos and Mongkol Mahavongtrakul's ("Plaintiffs") motion for final approval of class action settlement, for attorneys' fees, costs and expenses, and a class representative enhancement payment. Dkt. No. 48 ("Mot."). Defendant Sunvalleytek International, Inc. ("Sunvalleytek" or "Defendant") opposes the motion for attorneys' fees. Dkt. No. 49 ("Opp."). The Court held a hearing on the motion on August 20, 2020. *See* Dkt. No. 51. At the hearing, the Court directed the parties to file a supplemental memorandum regarding the class definition and proposed class notice. *Id.* On September 24, 2020, Plaintiffs filed a supplemental memorandum, requesting that the Court approve the settlement as amended; order that notice be disseminated, and set a date for a final fairness hearing. Dkt. No. 54. In light of Plaintiffs' request, the Court will view the pending Motion as a motion for preliminary approval. For the reasons detailed below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.[1]

---

[1] Because the parties have agreed to a classwide notice plan and a final fairness hearing, the Court will defer consideration of Plaintiffs' motion for attorneys' fees, costs and expenses, and a class representative enhancement payment.

## I. BACKGROUND

### A. Factual Background

Under the RAVPower label, Sunvalleytek manufactures, markets, and distributes for sale nationwide power banks ("Power Banks") that consumers use to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and cellphones. Dkt. No. 20 ("FAC") ¶¶ 1-3. The capacity of Power Banks is measured in milliampere-hours ("mAh"). *Id.* ¶ 3. The amount of mAh available to charge PEDs controls how frequently consumers may charge their PEDs and how much power is available to the consumer for each charge. *Id.* Plaintiffs allege that the products' actual capacities are substantially lower than what Sunvalleytek represents. *Id.* ¶ 19.

Because the internal circuitry in a Power Bank uses power that cannot be used to recharge a PED, and owing to voltage conversion losses, Plaintiffs contend that a Power Bank is incapable of delivering all of the internal battery capacity. Dkt. No. 48-1 ¶¶ 7-8. Plaintiffs also contend that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells that have that mAh capacity. Dkt. No. 48 2:10-11.

Accordingly, on November 14, 2018, Plaintiffs filed this class action complaint against Defendant, asserting violations of the California Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"); violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; violations of the New York General Business Law New York ("GBL") §§ 349, 350; violations of materially identical state consumer protection statutes; breach of express warranty; and unjust enrichment. FAC ¶¶ 38-114.

### B. Settlement Agreement

#### i. Original Terms

Following formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement. Dkt. No. 48-1 ("SA"). The key terms are as follows:

Settlement Benefits:

> A. As part of the consideration for this Agreement, Sunvalleytek agrees to
> 1. Change the product label to say the words "battery capacity" in

2

conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery cells of the Power Bank)

2. Change the user guide specifications to say the words "battery capacity" in conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery cells of the Power Bank)

3. Change the product description in the Amazon listings to convey that the specified mAh is the sum or total of the nominal rated capacity of the internal battery cells; and

4. Change the Amazon listing the bullet points to say "xxxx mAh internal battery capacity" or "internal battery capacity xxxx mAh" (where xxxx represents the number that is the sum of the nominal rated capacity of the internal battery cells in the power banks.)

SA § IV.A

<u>Release</u>:

"Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature that could reasonably have been, or in the future might reasonably be asserted by, Plaintiffs or Defendant, either in the Action or in any action or proceeding in this Court or in any other court or forum, against the Released Parties, including damages, costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity arising out of or relating to legal claims made by Plaintiffs out of [sic] or relating to the allegations in the Action or Defendant's labeling, marketing, advertising, packaging, promotion, manufacture, sale, and distribution of all Covered Products as alleged in the Action. For avoidance of doubt, this includes, all such claims that relate in any way to this Action or the capacity of internal cells of the batteries as measured in mAh, statements that were or are contained on the Covered Products or otherwise relate to the labeling, marketing, advertising, packaging, promotion, manufacture, sale, and distribution of the Covered Products with respect to capacity in conjunction with mAh, including future identical statements about Covered Products, which have been asserted or which could reasonably have been asserted by the Releasing Parties in the Action, including but not limited to claims alleging any type of bad faith, frivolous or vexatious litigation, fraud, misrepresentation, breach of warranty, unjust enrichment, or unfair trade practice under any state or federal law (including all claims for injunctive or equitable relief), but not including claims for personal injury or attorney's fees or costs (other than the attorney's fees and costs the Court may award pursuant to this Settlement).

SA § V.B.1.  The "Released Parties" are defined as:

Plaintiffs and Sunvalleytek, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns.  It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such

3

Released Parties are intended third-party beneficiaries of the Agreement.

*Id*. § V.B.2. The "Releasing Parties" are defined as "Plaintiffs Ines Burgos and Mongkol Mahavongtrakul and Sunvalleytek." *Id*. § V.B.3. In addition, "[a]bsent class members or members of the putative class or the settlement class shall not release any claims, and are not bound in any way, under this Settlement." *Id.* § V.F.

<u>Class Notice</u>:  There is no notice provided to class members.

<u>Opt-Out Procedure</u>:  There is no opt-out procedure in the settlement agreement.

<u>Incentive Award</u>:  The Named Plaintiffs applied for incentive awards of $5,000. *Id*. § VI.E.

<u>Attorneys' Fees and Costs</u>:  Class Counsel shall make an application for an award of Attorneys' Fees for work on this case (not to include any work on any related cases) not exceeding $315,000. Defendant may oppose that application except that it shall not propose to pay an amount less than $45,000. *Id*. § VI.B.

### ii.     Amended Terms

At the August 20, 2020 hearing on the motion, the Court ordered the parties to meet and confer regarding the class definition and class notice. *See* Dkt. No. 51. The parties then agreed to an amended settlement agreement with a new class definition and class notice plan. Dkt. No. 54.

The amended terms are as follows:

<u>Class Definition</u>: The Settlement Class is defined as:

> All consumers who have purchased any of the Covered Products in the United States.

Dkt. No. 54-2.[2]

<u>Class Notice</u>:  The proposed notice plan includes a notice posted in a prominent place on the websites of Plaintiffs' counsel 60 days before the Court holds a telephonic fairness hearing

---

[2] "Covered Products" are defined under the Settlement Agreement as "any size of any of the Power Banks designed for the primary purpose of use for portable charging of mobile phones, such devices consisting of a battery cell or cells, enclosed in a casing." SA § II.A.7.

regarding approval of the Settlement Agreement. *Id.* The proposed posting includes the date and subject matter of the upcoming fairness hearing; the settlement benefits; the requested attorneys' fees and costs; and an explanation that the proposed settlement "does not result in waiver of any claims members of the proposed class might have, for example, for financial damages." *Id*. Ex. A. The posting also invites class members to participate in the hearing and to submit written comments by 15 days before the hearing date. *Id.* Defendant also agrees to post a banner at the top of its website with information about the hearing and opportunity to participate with a link to the notice page of Plaintiffs' counsel. *Id.* Ex. B.

## II.     LEGAL STANDARD

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met.

Under Rule 23(a), a party intending "to certify a class must demonstrate that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). The "key" to finding a class under Rule 23(b)(2) "is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to *all* of the class members or as to *none* of them." *Id.*

(citation and internal quotation marks omitted) (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction . . . against the defendant," or "to an individualized award of monetary damages."  *Id.* at 360-61 (original emphasis).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).  Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"  *Id*. (citations and quotations omitted).

### III. DISCUSSION

#### A. Provisional Class Certification

The Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Dukes*, 564 U.S. 338, 350–51.  Class certification is a two-step process.  First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, Plaintiffs must establish that at least one of the bases for certification under Rule 23(b) is met.

##### iii. Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable."  Because Defendant has sold thousands of Power Banks to thousands of consumers, Declaration of D. Greg Blankinship (Dkt. No. 48-1, "Blankinship Decl." ¶ 3), the Court finds that the proposed settlement class is sufficiently numerous.

\\

### iv. Common Questions of Law or Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Here, all class members were exposed to the same allegedly false or misleading statement—that the power banks produce a specific mAh capacity, when the actual mAh capacity is alleged to be significantly lower. This results in many common questions of fact or law, including whether: (1) Defendant misrepresents Power Banks' mAh capacity; (2) Defendant's conduct was unfair or deceptive in violation of state consumer protection statutes; (3) Defendant's representations constitute a breached express warranty; (4) Defendant is unjustly enriched; (5) class members will be harmed by Defendant's actions; and (6) future misrepresentations can be prevented on a uniform basis. In short, "[t]he focus of this action—whether the []representation []misle[ads] reasonable consumers—is common to all class members." *Kumar v. Salov N. Am. Corp.*, No. 14-2411, 2017 WL 2902898, at *6 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018). Accordingly, the Court finds that commonality exists.

### v. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said,

under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020 (quotation omitted).

Here, the claims of Plaintiffs and all class members arise out of a singular course of conduct, namely allegedly uniform false and deceptive representatives regarding mAh capacity made in connection with the sale of Power Banks. Class members' claims are also premised on the same theories of liability—that Defendant's conduct constitutes violations of consumer protection laws, breaches of express warranty, and unjust enrichment. That is sufficient to satisfy the typicality requirement.

### vi. Adequacy of Representation

The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any conflicts of interest in this matter, and there there is no allegation that Plaintiffs or proposed class counsel have a conflict with any other class members. Likewise, Plaintiffs' counsel are qualified and experienced in prosecuting complex class actions nationwide, in both state and federal courts, including consumer protection class actions against Power Bank distributors like Defendant. Blankinship Decl. ¶¶ 13-17. The adequacy of representation requirement, therefore, is satisfied.

### B. Rule 23(b)(2) Certification

In addition to satisfying the requirements of Rule 23(a), Plaintiffs seeking class certification must meet the requirements of one of the prongs of Rule 23(b). In this case, Plaintiffs seek certification under Rule 23(b)(2).

Here, Defendant uniformly labelled and advertised its Power Banks by representing that

they had a certain mAh.  Blankinship Decl. ¶ 3, Ex. 5.  The only remaining question, then, is whether "a single injunction . . . would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  Based on the alleged mislabeling, the Court finds that it would, and grants certification under Rule 23(b)(2).

### C. Classwide Notice

Under Rule 23(c)(2), "any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class."  *See* Fed. R. Civ. P. 23(a) (emphasis added).  Additionally, Rule 23(h) requires that notice of any motion for attorneys' fees "*must* be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1) (emphasis added).

Here, Plaintiffs and Defendant initially contended that class notice was not required because the settlement provides for only injunctive relief.  *See* Mot. at 11; Opp. at 3.  The Court disagrees.  In *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020), the Ninth Circuit recently noted the oddity of parties arguing that class notice is not required, even in settlements involving injunctive relief:

> It does seem odd that the parties repeatedly emphasized the informational value of the settlement while simultaneously arguing that it was unnecessary to provide class members formal notice that this information exists and that, if they had been dissatisfied with the settlement terms, they could have objected.

*Id.*  Although the Ninth Circuit in *Campbell* ultimately affirmed the district court's approval of the settlement, critically the district court *did* require notice that was likely to reach absent class members in that case.  *Id.* at 1127, & n.15.  As this Court recently held in *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196-HSG, 2020 WL 2091801, at *3 (N.D. Cal. Mar. 31, 2020), the Court reads *Campbell* as a signal that district courts should be particularly cautious where the parties are loath to provide notice to absent class members.  If the class action settlement is "fundamentally fair, adequate and reasonable," as required under Rule 23, the parties should have no fear or hesitation about disclosing its terms to absent class members.  *See In re Heritage Bond Litig.*, 546 at 674–75.

As this Court noted in *Ang*, notice serves to give absent class members "the opportunity to understand how their rights will be affected by the proposed settlement; object to the settlement if they believe it is insufficient; and weigh in on the anticipated motions for attorneys' fees and incentive awards for the named Plaintiffs." 2020 WL 2091801 at *3. The amended class notice plan provides for publication of sufficient information for class members to understand their rights and participate in the final settlement approval process. Importantly, Defendant agrees to post notice on its website with a link to the information on Plaintiffs' counsel's website. *See id.* (denying preliminary approval of class action settlement for failure to provide adequate notice and noting the failure of the parties to provide notice by publication on defendant's website).

Accordingly, the Court finds that the amended settlement agreement provides for adequate classwide notice under the circumstances presented (i.e., an injunctive relief only settlement that does not require absent class members to waive any rights).

### D. Settlement Approval

#### i. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

To prevail on their claims, Plaintiffs would have to prove that a reasonable consumer would be deceived by Defendant's mAh representations. Courts routinely recognize that "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery." *Lilly v. Jamba Juice Co.*, No. 13-cv-2998-JST, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) (approving injunctive relief settlement) (quoting *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. 07-1841, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011)). To date, no court has addressed whether a reasonable consumer would be deceived by mAh

10

1   representations on Power Banks. This factor therefore favors approval of the settlement.

### ii. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. *See Lilly*, 2015 WL 2062858, at *3 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). In *Lilly*, a consumer protection class action, this factor weighed in favor of approving a settlement involving solely injunctive relief because the "settlement will result in complete relabeling of the challenged products." *Id*. Here, current and future Power Banks will reflect the agreed-upon modifications, while "continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief." *Id*. Eventually, Plaintiffs would have needed to move for class certification and summary judgment, or proceed to trial, and Defendant might have sought summary judgment. This additional litigation would have, in the best-case scenario, been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff and the class going home empty-handed. Accordingly, this factor also weighs in favor of settlement.

### iii. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. Here, Plaintiffs engaged in formal discovery. The parties served and responded to interrogatories, requests for production, and requests for admission, and Plaintiffs deposed a corporate representative of Defendant under Rule 30(b)(6). Plaintiffs consulted with an expert who tested Defendant's Power Banks to verify that they did not have the capacity to produce the promised mAh. Discovery in the case prior to settlement negotiations informed Plaintiffs' and Plaintiffs' counsels' understanding of the case and the parties' decision to settle. The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### iv. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by

United States District Court
Northern District of California

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Here, Plaintiffs' counsel are experienced in litigating similar consumer class actions. Plaintiffs' counsel are currently prosecuting several different actions around the country alleging similar claims premised on misrepresentations regarding the mAh capacity of Power Banks by manufacturers, distributors, and sellers. *See Hester v. Walmart, Inc.*, No. 18-05225 (W.D. Ark.); *Mancuso v. RFA Brands*, No. 18-0687 (W.D.N.Y.); *Brady, et al. v. Anker Innovations Limited, et al.*, 18-11396; *Young, et al. v. Mophie, Inc.*, 18-00827 (C.D. Cal.); *Geske v. PNY Technologies, Inc.*, 19-05170 (N.D. Ill.).

The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest but favors approval.

### v. Reaction of Class Members

In light of the parties' amended agreement to provide notice to class members, this factor will be weighed following the final fairness hearing.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for implementing classwide notice plan | |
| Deadline for Class Members to object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 12/11/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge