Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

D. Greg Blankinship (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
Telephone:  914-298-3290
Facsimile:  914-522-5561
*gblankinship@fbfglaw.com*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| INES BURGOS and MONGKOL MAHAVONGTRAKUL, individually and on behalf of other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> SUNVALLEYTEK INTERNATIONAL, INC., <br><br> Defendant. | Case No. 4:18-cv-06910-HSG <br><br> <u>**CLASS ACTION**</u> <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS** <br><br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Courtroom: 2, 4th Floor <br> Date: April 22, 2021 <br> Time: 2:00 p.m. |

1

### NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on April 22, 2022, at 2 p.m., in Courtroom 2 of the

4 United States District Court for the Northern District of California, Ronald V. Dellums Federal

5 Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable

6 Haywood S. Gilliam, Jr., presiding, Plaintiffs Ines Burgos and Mongkol Mahavongtrakul

7 ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of

8 Civil Procedure ("Rule"): (i) appointing Plaintiffs as Class Representatives and the firms of

9 Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and Kaplan Fox & Kilsheimer

10 LLP ("Kaplan Fox") as Class Counsel; (ii) granting final approval of the proposed Settlement[1]

11 with Defendant SunvalleyTek International, Inc. ("Defendant" or "SunvalleyTek"); (iii) awarding

12 attorneys' fees and expenses in the amount of $313,000.00 and $20,000, respectively; and (iv)

13 granting service awards to Plaintiffs in the amount of $5,000.00 each.

14 This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

15 and Authorities set forth below, the accompanying Declaration of D. Greg Blankinship in Support

16 of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees and

17 Expenses, and Service Awards, dated March 29, 2021 ("Blankinship Declaration"), and the

18 exhibits thereto, the pleadings and records on file in this Action, and other such matters and

19 argument as the Court may consider at the hearing of this motion.

20

21

22

23

24

25

26

27

---

[1] 1 All capitalized terms are defined in the Joint Stipulation of Settlement ("Settlement" or "Stipulation"), dated May 6, 2020, unless otherwise noted.

28

# TABLE OF CONTENTS

**Page**

Table Of Authorities……………………………………..……………………………iv

I.      BACKGROUND ........................................................................................................1

II.     SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT ...........................3

III.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES .....5

        A.     The Settlement Class Satisfies Rule 23(a) ........................................................6

               1.    The Class Is So Numerous That Joinder Of All Members Is
                     Impracticable…………………………………………………....6

               2.    There Are Questions Of Law Or Fact Common To The Class. ....................7

               3.    Plaintiffs' Claims Are Typical Of The Claims Of The Class. ......................8

               4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class....8

               5.    Ascertainability Is Not A Barrier To Certifying The Proposed Settlement
                     Class. ........................................................................................ 9

        B.     The Proposed Settlement Class Satisfies Rule 23(b)(2) .......................................10

IV.     THE COURT ORDERED CLASSWIDE NOTICE.......................................... 11

V.      THE COURT SHOULD APPROVE THE SETTLEMENT .............................................11

        A.     The Strength of Plaintiffs' Case ...........................................................12

        B.     The Risks Of Continued Litigation .......................................................13

        C.     The Risks of Maintaining A Class Action Status Throughout Trial ....................14

        D.     The Extent of Discovery And Stage Of The Proceedings ....................................14

        E.     Counsels' Experience .............................................................................15

VI.     THE COURT SHOULD APPROVE PLAINTIFFS' COUNSELS' REQUEST FOR
        $313,000 IN ATTORNEYS' FEES .................................................................... 16

        A.     FBFG's Hours Were Reasonable…………………………………………..16

        B.     FBFG'S Rates Are Reasonable………………………………………………..21

        C.     Even If The Court Reduces FBFG's Lodestar, Plaintiffs' Fee Request Is

Reasonable Because Their Counsel Earned A Multiplier………………………..22

VII.    THE COURT SHOULD APPROVE REIMBURSEMENT OF EXPENSES ................. 23

VIII.   THE COURT SHOULD APPROVE PLAINTIFFS' SERVICE AWARDS ..................24

IX.     CONCLUSION ..........................................................................................................25

NOTICE OF MOT. AND MOT. FOR FINAL APPR., ATTY FEES, SERVICE AWARDS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-01196, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ................................................. 10

*Baby Neal for and by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ............................................................................................................. 10

*Banas v. Volcano Corp.*,
47 F. Supp. 3d 957 (N.D. Cal. 2014) .......................................................................................... 22

*Bellinghausen v. Tractor Supply Co.*,
303 F.R.D. 611 (N.D. Cal. 2014) .................................................................................................. 6

*Buccellato v. AT & T Operations, Inc.*,
No. C10-00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ............................................... 22

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ................................................................................................ 10

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................................................................................... 14

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................................... 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 5, 11, 12

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................................ 25

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ...................................................................................................... 7

*Flores v. City of Westminster*,
No. 110278, 2014 WL 12783201 (C.D. Cal. Oct. 23, 2014) .................................................... 20

*G. F. v. Contra Costa Cty.*,
No. 13- 03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ...........................................Passim

*Genesis Merch. Partners, LP v. Nery's USA, Inc.*,
No. 11-CV-1589 JM (WVG), 2013 WL 12094825 (S.D. Cal. Dec. 6, 2013) ........................... 20

*Grannan v. Alliant Law Grp., P.C.*,
   No. 10-02803, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) .......................................... 15

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-2471, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ............................... 12, 14, 23

*Gray v. Golden Gate Nat'l Recreational Area*,
   279 F.R.D. 501 (N.D. Cal. 2011) .............................................................................. 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 8, 12

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................. 23, 24

*Harris v. Vector Marketing Corp.*,
   No. C-08- 5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ...................................... 25

*Hefler v. Wells Fargo & Co.*,
   No. 16-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................... 22

*Hernandez v. Cty. of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ............................................................................. 9, 10

*In re HP Power Plug and Graphic Card Litig.*,
   No. C06-2254 RMW, 2008 WL 2697192 (N.D. Cal. Jul. 7, 2008) ............................ 22

*In re Lenovo Adware Litig.*,
   No. 15-MD-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ............................ 22

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..................................................................... 7

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 15

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. 07-1841, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ............................... 13, 14

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................... 5

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ............................................................................... 9

Jordan v. Multnomah Cty.,
   815 F.2d 1258 (9th Cir. 1987) ................................................................................. 22

*Keyes v. Sec. Check, LLC,*
  No. C 07-3598 PJH (JL), 2008 WL 11388426 (N.D. Cal. July 15, 2008) .................................. 21

*Kumar v. Salov N. Am. Corp.,* No.,
  No. 14-2411, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ......................................................... 8

*Lazarin v. Pro Unlimited, Inc.,*
  No. 11-03609, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ..................................................... 14

*Lealao v. Beneficial California, Inc.,*
  82 Cal. App. 4th 19 (2000) (applying California law) ................................................................. 16

*Lilly v. Jamba Juice Co.,*
  No. 13-02998-JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) ...................................... Passim

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ...................................................................................................... 7

*McCrary v. Elations Co., LLC,*
  No. 13–00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) .................................................... 10

*Meister v. Regents of Univ. of California,*
  67 Cal. App. 4th 437 (1998) ...................................................................................................... 16

*Miller v. Wise Co., Inc.,*
  No. 17-0616, 2020 WL 1129863 (C.D. Cal. Feb. 11, 2020) ............................................... 21, 24

*Moreno v. San Francisco Bay Area Rapid Transit Dist.,*
  No. 17- 02911, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ..................................................... 12

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
  287 F.R.D. 590 (C.D. Cal. 2012) ................................................................................................ 7

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982) ...................................................................................................... 12

*Parsons v. Ryan,*
  754 F.3d 657 (9th Cir. 2014) .................................................................................................. 7, 8

*Ries v. Ariz. Bevs. U.S. LLC,*
  287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................................ 6

*Rodriguez v. Bumble Bee Foods, LLC,*
  No. 17- 2447, 2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) ..................................................... 24

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ................................................................................................... 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................. 13, 15, 25

*Jeanne & Nicolas Stathakos, et.al, v. Columbia Sportswear Company,et. al.*
   No. 15-04543-YGR, 2018 WL 582564, (N.D. Cal. Jan. 25, 2018*)* ...................................... 12, 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................... 5, 25

*Stevens v. Safeway Inc.*,
   No. 05-1988, 2008 WL 11496497 (C.D. Cal. Feb. 25, 2008) ...................................... 14

*Vasquez v. Kraft Heinz Food Co.*,
   No. 16-2749, 2020 WL 1550234 (S.D. Cal. Apr. 1, 2020) ...................................... 22

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................... 6, 7, 11

*White v. Experian Info. Sols., Inc.*,
   No. 05-1070, 2011 WL 2971957 (C.D. Cal. July 15, 2011) ...................................... 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 5

**Statutes**

Cal. Bus. & Prof. Code §§ 17200-17210 .......................................................................... 2

Cal. Bus. & Prof. Code §§ 17500 ..................................................................................... 2

Cal. Civ. Code §§ 1750- 1785............................................................................................ 2

**Rules**

Rule 23 of the Federal Rules of Civil Procedure ...............................................................

NOTICE OF MOT. AND MOT. FOR FINAL APPR., ATTY FEES, SERVICE AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Ines Burgos and Mongkol Mahavongtrakul (collectively, "Plaintiffs"), on behalf of the class (the "Class"), submit this Memorandum of Law in support of their motion for approval of a proposed class action settlement, an award of attorneys' fees and expenses, and for Plaintiffs' service awards in the above-captioned action (the "Litigation").

The proposed settlement (which provides for injunctive relief only) warrants this Court's approval. The settlement was the first of its kind in that it requires Defendant SunvalleyTek International, Inc. ("SunvalleyTek" or "Defendant") to change the way it labels every power bank it sells in a manner that provides consumers with the information they need to make informed purchasing decisions. As Defendant has repeatedly claimed, the manner in which it labels its power banks is consistent with many other power bank sellers in the U.S. market. Approval of this settlement and the ensuing injunctive relief obtained though Plaintiffs and their counsels' diligent efforts may well be the first step in achieving widespread changes in the power bank market that will assist consumers everywhere.

## I.     BACKGROUND

Under the RAVPower label, SunvalleyTek manufactures, markets, and distributes for sale nationwide power banks ("Power Banks") that consumers use to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and cellphones. First Am. Compl. ("FAC" or "Complaint"), ¶ 3 (ECF. No. 20). The capacity of Power Banks is measured in milliampere-hours ("mAh"). *Id.* The amount of mAh available to charge PEDs controls how frequently a consumer may charge their PEDs and how much power is available to the consumer for each charge. *Id. ¶* 3. Therefore, this information is essential to consumers' purchasing decisions, and Defendant prominently displays the mAh of its Power Banks on the Power Banks' packaging and on Amazon.com listings. *Id.*

Plaintiffs allege that the Products' actual capacities are substantially lower than what SunvalleyTek represents. *Id.* ¶ 19. Plaintiffs support these allegations with results from a skilled and experienced testing company. *Id.* In fact, Defendant bases its mAh representations, not on

the mAh its Power Banks are capable of delivering to recharge PEDs, but on the internal battery cells contained within a Power Bank.  *See* Blankinship Decl. ¶¶ 7-8.[2]  Because the internal circuitry in a Power Bank uses power that cannot be used to recharge a PED, and owing to voltage conversion losses, a Power Bank is incapable of delivering all of the internal battery capacity.  *Id.*  Plaintiffs therefore allege that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells that have that mAh capacity.

Accordingly, on November 14, 2018, Plaintiffs filed a class action complaint against Defendant, asserting violations of the California Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"); violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; violations of the New York General Business Law New York ("GBL") §§ 349, 350; violations of materially identical state consumer protection statutes; breach of express warranty; and unjust enrichment.  Compl. ¶¶ 38-114.

The Litigation was hard fought.  The Parties engaged in substantial discovery, serving and responding to interrogatories, requests for production and for admission.  Defendant also submitted to a Rule 30(b)(6) deposition of Allen Fung, a General Manager for SunvalleyTek. Additionally, both parties had scheduled additional depositions of potential witnesses.  Plaintiffs reviewed Defendant's production, consisting of thousands of pages of documents and substantial data, and the Parties conferred multiple times.  Plaintiffs also conferred with experts concerning the merits of the case.  The parties participated in a mediation before Mark LeHocky on July 9, 2019 (ECF. No. 43).  While they were unable to reach agreement on a proposed settlement at that time, they were able to subsequently reach a proposed settlement for the Court's consideration.

Plaintiffs' Counsel previously filed a Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Expenses, and Service Awards on May 6, 2020.  The Court subsequently directed the Parties to provide a notice program and revise the class definition; they

---

[2] A Power Bank is comprised of internal rechargeable battery cells and the circuitry required to safely convert battery voltage for PED use.

did so, and the Court approved that proposed class definition and notice plan. *See* Order Granting Preliminary Approval of Class Action Settlement ("Order"), ECF No. 57. Plaintiffs' Counsel complied with the Order and made the required notice posting to fbfglaw.com and 4classaction.com on January 15, 2021. Blankinship Decl. ¶ 12, To date, FBFG has not been contacted by any member of the putative class. *Id.* Defendant also made the required posting, and Defendant's counsel informed Plaintiff that it has not been contacted by any member of the putative class.

## II.   <u>SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT</u>

Plaintiffs seek final approval of the Settlement. Both Plaintiffs and Defendant (collectively, "the Parties") support implementation of this agreement, although, as noted below, they disagree on the amount of attorneys' fees that the Court should award to Plaintiffs' Counsel. The Settlement requires that Defendant substantially change the way it markets Power Banks with respect to capacity. Defendant must: 1) Change Power Bank labels to say the words "battery capacity" in conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery cells of the Power Bank); 2) Change the user guide specifications to say the words "battery capacity" in conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery cells of the Power Bank); 3) Change the product description in the Amazon listings, where a vast majority of RavPower Banks are sold Blankinship Decl. ¶ 3., to convey that the specified mAh is the sum of the nominal rated capacity of the internal battery cells; and 4) Change the bullet points of the Amazon listing to say "xxxx mAh internal battery capacity" or "internal battery capacity xxxx mAh" (where xxxx represents the number that is the sum of the nominal rated capacity of the internal battery cells in the power banks.).

This is an exceptional achievement, resulting in the corrective action anticipated by the Complaint without causing the Parties to incur the immeasurable expense and risks associated with trial and appeal and the resulting use of scarce judicial resources.  Defendant must modify the allegedly false product labels, user guide specifications, and product descriptions in Amazon listings to better convey that the displayed mAh reflects the internal battery capacity contained in a Power Bank.  Indeed, Defendant has always contended that the way in which it labels and markets its Power Banks is consistent with widespread industry practice.  Thus, Plaintiffs have achieved a landmark agreement that may help establish a fairer market for Power Banks in which consumers are provided with true and accurate information regarding Power Bank capacity. Thus, the proposed Settlement offers substantial benefits to all consumers in the market for Power Banks and avoids the delay, expense, and risks inherent in litigating claims through trial and appeal.

While the Parties agree that the Court should issue an award of attorneys' fees to Plaintiffs' Counsel, they disagree as to the amount.  Plaintiffs' Counsel have agreed not to request that the Court award more than $315,000, while Defendant has agreed not to request that the Court award less than $45,000.  The amount of attorneys' fees to be awarded is the only dispute the Parties have with respect to the Settlement.  Furthermore, reimbursement of reasonable expenses in the amount of $20,000 is warranted, particularly given that FBFG alone incurred $20,084.65 in expenses.  Defendant has agreed not to object to an award of expenses up to $20,000.

The Settlement is the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive discovery in the action and, as such, were able to assess the strengths and weaknesses of the claims and defenses asserted, the potential to achieve a more fair marketplace, and the fairness of the Settlement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notably, the proposed Order and Settlement only prohibit Plaintiffs, and not members of the Settlement Class, from pursuing individual monetary claims against Defendant.  Plaintiffs respectfully submit that the Court should approve the Settlement because it provides broad injunctive relief while expressly preserving the rights of the Settlement Class to seek monetary relief if they so choose.

## III.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

Plaintiffs respectively request that the Court certify the proposed class under Rule 23(b)(2) for settlement purposes.  There is no question that "Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc. Sec. Litig. II,* 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v. Gleich,* 318 F.3d 93d 937 (9th Cir. 2003)).  In fact, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions," even though "a class action may not be settled without court approval." *G. F. v. Contra Costa Cty.,* No. 13-03667, 2015 WL 4606078, at *8 (N.D. Cal. July 30, 2015) (quoting *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).  Indeed, "rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

Under Rule 23(a), a party intending "to certify a class must demonstrate that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  A potential fifth factor, ascertainability, does not apply to class actions under Rule 23(b)(2).  Rule 23(b)(2) is satisfied if "'the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole [.]'" *Contra Costa,* 2015 WL 4606078, at \*11 (quoting Fed. R. Civ. P. 23(b)(2); citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011)).

Plaintiffs seek certification of the following settlement class pursuant to Rule 23(b)(2): All consumers who have purchased any of the Covered Products in the United States.  Since all the certification requirements for settlement purposes are met and Defendant consents to class action certification for settlement purposes, Plaintiffs respectfully request the Court certify the action.

A.    <u>The Settlement Class Satisfies Rule 23(a)</u>

As previously noted, there are five Rule 23(a) requirements (numerosity, commonality, typicality, adequacy, and ascertainability).  The proposed settlement class meets all five.

1.    **The Class Is So Numerous That**
**<u>Joinder Of All Members Is Impracticable.</u>**

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." "No specific number is required, although there is a presumption that a class with more than 40 members is impracticable to require joinder." *Ries v. Ariz. Bevs. U.S. LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."); *Contra Costa,* 2015 WL 4606078, at \*9 (in certifying a class under Rule 23(b)(2), finding numerosity because "the class contains at least 40").  Since Defendant sold thousands of Power Banks to thousands of consumers (Blankinship Decl. ¶ 3), the proposed settlement class is sufficiently numerous.

## 2.     There Are Questions Of Law Or Fact Common To The Class.

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action.  Fed. R. Civ. P. 23(a)(2).  Generally, courts have liberally construed the commonality requirement to require just one issue common to all class members.  "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do."  *Wal-Mart,* 564 U.S. at 359; *see also Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").  Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Parsons v. Ryan,* 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1029 (9th Cir. 2012)).  This provision is easily satisfied, especially in consumer protection class actions where, as in the present case, all class members were exposed to similar false or misleading statements regarding a company's products.  *See, e.g., In re NJOY, Inc. Consumer Class Action Litig.,* 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015).  ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality.").  Minor differences in the offending representations do not preclude certification.  *See Negrete v. Allianz Life Ins. Co. of N. Am.,* 287 F.R.D. 590, 602 (C.D. Cal. 2012).

Here, all class members were exposed to the same false or misleading statement -- that the power banks produce a specific mAh capacity, when, in fact, the actual mAh capacity is significantly lower.  This results in many common questions of fact or law, including: whether Defendant misrepresents Power Banks' mAh capacity; whether Defendant's conduct was unfair or deceptive in violation of state consumer protection statutes; whether Defendant's representations constitute a breached express warranty; whether Defendant is unjustly enriched; whether class members will be harmed by Defendant's actions; and whether future

misrepresentations can be prevented on a uniform basis.  In short, "[t]he focus of this action -- whether the []representation misle[ads] reasonable consumers -- is common to all class members." *Kumar v. Salov N. Am. Corp.,* No. 14-2411, 2017 WL 2902898, at *6 (N.D. Cal. July 7, 2017), aff'd, 737 F. App'x 341 (9th Cir. 2018).  Accordingly, commonality exists.

### 3.     Plaintiffs' Claims Are Typical Of The Claims Of The Class.

Rule 23(a)(3) provides that the claims of the Plaintiffs must be "typical of the claims of … the class."  Fed. R. Civ. P. 23(a)(3).  "Under this rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those absent class members; they need not be substantially identical." *Parsons,* 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)).  In the context of a Rule 23(b)(2) class action, typicality is shown where, "[l]ike the proposed class representatives, all members of the proposed Settlement Class are being or will be subjected to the systematic policies and practices … and have or will likely suffer injuries as a result."  *Contra Costa,* 2015 WL 4606078, at *10.

Here, the claims of Plaintiffs and all class members arise out of a singular course of conduct, namely uniform false and deceptive representatives regarding mAh capacity made in connection with the sale of Power Banks.  Class members' claims are also premised on the same theories of liability -- that Defendant's conduct constitutes violations of consumer protection laws, breaches of express warranty, and unjust enrichment.  Under such circumstance, certification is warranted.  *See Kumar,* 2017 WL 2902898, at *6.  "[Plaintiffs] and other consumers around the country were all exposed to the same product and the same alleged misrepresentations, making [them] typical of class members nationwide."

### 4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two questions must be considered in this determination: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Contra Costa,* 2015 WL 4606078, at *10 (internal citations omitted).

Here, Plaintiffs have adequately represented the Settlement Class, and they will continue to do so.  There exists no conflict, and, in any event, "[c]lass representatives have less risk of conflict with unnamed class members when they seek only declaratory and injunctive relief." *Hernandez v. Cty. of Monterey,* 305 F.R.D. 132, 160 (N.D. Cal. 2015).  Moreover, Plaintiffs have worked diligently with counsel in their preparation of pleadings and responding to lengthy requests for discovery.  There is no claim that Plaintiffs were anything but credible.

Likewise, Plaintiffs' Counsel are qualified and experienced in prosecuting complex class actions nationwide, in both state and federal courts, including customer protection class actions against Power Bank distributors like Defendant.  Blankinship Decl. ¶¶ 14-18; Decl. of Laurence D. King, ("King Decl."), ¶ 9, (ECF. No. 48-2); Decl. of Sam Strauss, ("Strauss Decl."), ¶¶ 3-4 (ECF. No. 48-3).  Thus, Plaintiffs' Counsel are capable of fairly and adequately representing the Class.

### 5.    Ascertainability Is Not A Barrier To Certifying The Proposed Settlement Class.

"The ascertainability requirement does not apply to Rule 23(b)(2) actions."  *In re Yahoo Mail Litig.,* 308 F.R.D. 577, 597 (N.D. Cal. 2015).  To the extent that one might apply, the class definition sufficiently satisfies that ascertainability requirement.  "In this Circuit, it is enough that

the class definition describes a set of common characteristics sufficient to allow a prospective

plaintiff to identify himself or herself as having a right to recover based on the description."

*McCrary v. Elations Co., LLC,* No. 13–00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014)

(collecting cases). Here, all plaintiffs need to know to determine if they are in the proposed

settlement class is whether they may purchase a RavPower-branded Power Bank.

### B.    The Proposed Settlement Class Satisfies Rule 23(b)(2)

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is "'almost

automatically satisfied in actions primarily seeking injunctive relief.'" *Hernandez,* 305 F.R.D. at

151 (citing *Gray v. Golden Gate Nat'l Recreational Area,* 279 F.R.D. 501, 520 (N.D. Cal. 2011)

(quoting *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 58 (3d Cir. 1994)); *see, e.g.,*

*Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir. 2010); *Californians for Disability Rights, Inc.*

*v. Cal. Dep't of Transp.,* 249 F.R.D. 334, 345 (N.D. Cal. 2008)). To satisfy Rule 23(b)(2),

Plaintiffs need only show that Defendant's "policies and practices … constitute shared grounds

for all of the individuals in the proposed class, demonstrating that Defendants have acted or

refused to act on grounds that apply generally to the class." *Contra Costa,* 2015 WL 4606078, at

*11. Defendant uniformly labeled and advertised its Power Banks by representing that they had a

certain mAh when they did not. A single injunction requiring Defendant to clarify its mAh

representation to prevent consumer confusion applies to the entire class, rendering certification

under Rule 23(b)(2) appropriate. *See Ang v. Bimbo Bakeries USA, Inc.,* No. 13-01196, 2018 WL

4181896, at *12 (N.D. Cal. Aug. 31, 2018) ("The … question, then, is whether 'a single

injunction … would provide relief to each member of the class.' Based on the alleged

mislabeling, the Court finds that it would, and grants certification of all four classes under Rule

23(b)(2).") (citing *Dukes*, 564 U.S. at 360).  Certifying this class under Rule 23(b)(2) will redress Defendant's misleading policies and encourage a fairer marketplace for all consumers. Accordingly, Rule 23(b)(2) is satisfied.

## IV.    THE COURT ORDERED CLASSWIDE NOTICE

On August 20, , 2020, the Court ordered the Parties to propose a plan to provide notice of the proposed settlement to the class.  *See* Order, ECF No. 51.  In compliance with the Order, the Parties filed a supplemental memorandum which included a proposed class notice plan on September 24, 2020, *see* Supplemental Memorandum of Law In Support of Motion for Approval of Class Action Settlement, Attorneys' Fees, and Expenses, and Service Awards. ("Amendment") (ECF. No 54), which the Court approved on December 11, 2020.  *See* Order Granting Preliminary Approval of Class Action Settlement, ECF No. 57.  In adherence to the notice plan, Plaintiffs' Counsel posted a notice in a prominent place on their websites (fbfglaw.com and 4classaction.com) on January 15, 2021, more than the required sixty days before the scheduled April 22, 2021 Final Fairness Hearing date.  Blankinship Decl. at ¶12.  Said posting includes the date and subject matter of the upcoming Fairness Hearing; the settlement benefits; the requested attorneys' fees and costs; requested class representatives' service awards; and an explanation that the proposed settlement does not waive the rights of any class member to any future monetary claims.  *See* fbfglaw.com and 4classaction.com.  The posting further invites class members to participate in the Final Fairness Hearing and to submit written comments no later than fifteen days before the scheduled hearing.  *Id.*  To date, FBFG has not been contacted by any class member.  *Id.*

## V.    THE COURT SHOULD APPROVE THE SETTLEMENT

As previously noted, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."  *Contra Costa,* 2015 WL 4606078, at *8 (quoting Class

Plaintiffs, 955 F.2d at 1276).  This applies "particularly where complex class action litigation is concerned." *Class Plaintiffs,* 955 F.2d at 1276 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)).  Courts asked to approve a class action settlement determine whether it is fair, reasonable, and adequate. "In making this determination, a court typically considers the following factors: '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'" *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* No. 17-02911, 2019 WL 343472, at *3 (N.D. Cal. Jan. 28, 2019) (approving Rule 23(b)(2) injunctive relief only settlement and quoting *Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004)).  *See Stathakos,* 2018 WL 582564, at *4 (approving injunctive relief only class settlement based on same factors and citing *Hanlon,* 150 F.3d at 1026).  A settlement involving injunctive relief is fair, adequate, and reasonable where the parties' injunctive relief settlement "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Capital Mgmt. Servs., L.P.,* No. 10-2471, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (approving injunctive relief only settlement).  The Settlement here does precisely that.

### A.    The Strength of Plaintiffs' Case

To prevail on their claims, Plaintiffs would have to prove that a reasonable consumer would be deceived by Defendant's mAh representations.  As Judge Rogers noted, "any time that liability hinges on reasonableness, a favorable verdict cannot be certain.  Because of the

uncertainty of the recovery or injunctive relief after trial, this factor weighs in favor of approval." *Stathakos,* 2018 WL 582564, at *5*; Lilly,* 2015 WL 2062858, at *3 (same).

The novel nature of this Litigation renders Plaintiffs' case all the more challenging.  Prior to November 2018 no consumer had ever brought a proposed class action alleging that a defendant misrepresented the mAh capacity of its power banks.[3]  This case, filed on November 14, 2018, was the first such case ever filed in the Ninth Circuit.  Courts routinely recognize that "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery."  *Lilly,* 2015 WL 2062858, at *3 (approving injunctive relief settlement and quoting *In re Wells Fargo Loan Processor Overtime Pay Litig.,* No. 07-1841, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011)).  This factor weighs in favor of approving the Settlement.

### B.  The Risks Of Continued Litigation

The risks, expense, complexity, and likely duration of litigation also weigh in favor of approving the settlement, because the proposed injunctive relief would promptly result in relabeling Power Banks, and further litigation would be inevitable absent a settlement agreement. *See Lilly,* 2015 WL 2062858, at *3 (citing *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir. 2009)).  In *Lilly,* a consumer protection class action in the Northern District, this factor weighed in favor of approving a settlement solely involving injunctive relief, because the "settlement will result in complete relabeling of the challenged products." *Id.*  Here, as in *Lilly,* current and future Power Banks will reflect the agreed-upon modifications, while "continued

---

[3] In November 2018, other plaintiffs, represented by FBFG, filed four cases similar to the one at bar: *Mancuso v. RFA Brands LLC, d/b/a MyCharge,* No. 18-06807, ECF. No. 1, Complaint, filed November 13, 2018 (W.D.N.Y.); *Mazzone v. Topstar,* No. 18-06989, ECF. No. 1, Complaint, filed November 19, 2018 (N.D. Cal.); *Mahavongtrakul v. Inland Products, Inc.,* No. 18-07261, ECF. No. 1, Complaint, filed November 30, 2018 (N.D. Ca); and *Hester v. Walmart, Inc.,* No. 18-05225, ECF. No. 1. Complaint, filed November 14, 2018 (W.D. Ark.).

1    litigation could not result in any greater injunctive relief to the class and would only deprive the

2    class of immediate relief." *Id.*  Accordingly, this factor supports approval of the Settlement.

3    **C.        The Risks of Maintaining A Class Action Status Throughout Trial**

4              Courts also consider whether uncertainty remains as to class certification.  Here, there is a

5    substantial risk that the Court may not certify the class.  *See Stevens v. Safeway Inc.,* No. 05-1988,

6    2008 WL 11496497, at *6 (C.D. Cal. Feb. 25, 2008) ("Given the possibility that the court might

7    have granted defendants' motion, and decertified the class, this factor weighs in favor of approval

8    of the proposed settlement."); *Lazarin v. Pro Unlimited, Inc.*, No. 11-03609, 2013 WL 3541217,

9    at *7 (N.D. Cal. July 11, 2013) ("Named Plaintiffs contend that the claims in this case are

10   appropriate for class certification, but Defendants would certainly have an argument against

11   certification in the absence of this Settlement."); *Grant v. Capital Mgmt. Servs., L.P.,* No. 10-

12   2471, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) ("The scope and detail of the injunctive

13   relief agreed upon in the settlement would also be at risk if the case proceeded to trial.").  On the

14   other hand, "the class settlement successfully removes these risks from the class members…."

15   *Wells Fargo,* 2011 WL 3352460, at *6; see, e.g., *Chun-Hoon v. McKee Foods Corp.,* 716 F.

16   Supp. 2d 848, 851 (N.D. Cal. 2010) ("Because a risk of decertification has been acknowledged by

17

18   both parties, this factor slightly favors settlement.").  Here, this factor also favors settlement.

19

20   **D.        The Extent of Discovery And Stage Of The Proceedings**

21            This factor favors settlement if "Plaintiffs conducted an extensive amount of formal

22   discovery prior to the settlement agreement." *Lilly,* 2015 WL 2062858, at *4.  Here, Plaintiffs

23   engaged in extensive, formal discovery.  The Parties served and responded to interrogatories,

24   requests for production, and requests for admission, and Plaintiffs deposed a corporate

25   representative of Defendant under Rule 30(b)(6).  Plaintiff also consulted with an expert who

26   tested Defendant's Power Banks to verify that they did not have the capacity of producing the

27

28                                                    - 14 -                    Case No. 4:18-cv-06910-HSG

promised mAh.  Thus, discovery in this case prior to settlement negotiations informed Plaintiffs'

and Plaintiffs' Counsels' understanding of the case and the Parties' decision to settle.  Plaintiffs

therefore have sufficiently developed an understanding of the strengths and weaknesses of the

case.  *Grannan v. Alliant Law Grp., P.C.,* No. 10-02803, 2012 WL 216522, at *7 (N.D. Cal. Jan.

24, 2012) (finding that the extent of discovery weighed in favor of granting approval of a

settlement agreement where discovery consisted solely of the plaintiff subpoenaing documents,

because "plaintiffs argue (and defendant does not oppose) that even this limited discovery gives

them a clear view of the strengths and weaknesses of the case.").  Accordingly, this factor also

favors approval of the Settlement.

### E.   Counsels' Experience

"The recommendations of plaintiffs' counsel should be given a presumption of

reasonableness," because "[p]arties represented by competent counsel are better positioned than

courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]"

*Rodriquez,* 563 F.3d at 967 (quoting *In re Omnivision Tech., Inc.,* 559 F. Supp. 2d 1036, 1043

(N.D. Cal. 2008).  Thus, courts heavily consider the competence of counsel, which is

demonstrated by "their experience in litigating similar consumer class actions." *Lilly,* 2015 WL

2062858, at *4.

Here, it is undisputed that Plaintiffs' Counsel are experienced in litigating similar

consumer class actions.  FBFG is a leading class action law firm.  It regularly prosecutes

consumer claims, and its attorneys are regularly appointed as class counsel in such actions.  *See*

Blankinship Decl. ¶¶ 14-18.  Indeed, FBFG is currently prosecuting several different actions

around the country alleging similar claims premised on misrepresentations regarding the mAh

capacity of Power Banks from manufacturers, distributors, and seller of Power Banks.  *See Hester

v. Walmart, Inc.,* No. 18-05225 (W.D. Ark.); *Mancuso v. RFA Brands,* No. 18-0687 (W.D.N.Y.);

*Hester v. Walmart, Inc.,* 18-05225 (W.D. Ark.); *Brady, et al. v. Anker Innovations Limited, et al.,*

18-11396; *Young, et al. v. Mophie, Inc.,* 18-00827 (C.D. Cal.); *Geske v. PNY Technologies, Inc.,*

19-05170 (N.D. Ill.).  Kaplan Fox is also a nationally recognized law firm that has extensive experience in complex class action litigation, as is Turk Strauss.  *See* King Decl. ¶ 9; Strauss Decl. ¶¶ 3-4.  Accordingly, the experience of counsel supports approval of the Settlement.

## VI.    THE COURT SHOULD APPROVE PLAINTIFFS' COUNSELS' REQUEST FOR $313,000 IN ATTORNEYS' FEES.

Defendant opposes Plaintiffs' request for an award of attorneys' fees in the amount of $313,000.  Given the extraordinary result achieved by Plaintiffs' counsel in this litigation, as well as the reasonableness of FBFG's lodestar and an award of a multiplier (if necessary), Defendant's arguments should be rejected, and Plaintiffs respectfully request that this Court award the full amount of the requested fee.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  When state substantive law applies, attorneys' fees are to be awarded in accordance with state law.  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).  "California courts apply the lodestar method in class actions governed by California law."  *Lilly,* 2015 WL 2062858, at *5 (citing *Lealao v. Beneficial California, Inc.,* 82 Cal. App. 4th 19, 26 (2000) (applying California law); *Meister v. Regents of Univ. of California,* 67 Cal. App. 4th 437, 448-49 (1998)).  Similarly, under federal law, in "injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."  *Lilly,* 2015 WL 2062858, at *4.

### A.    FBFG's Hours Were Reasonable.

Plaintiffs' Counsel worked efficiently and diligently in pursuing this novel matter.  Below is a table identifying each FBFG attorney who worked on the case that summarizes the total time expended on various tasks:

NOTICE OF MOT. AND MOT. FOR FINAL APPR., ATTY FEES, SERVICE AWARDS

| Attorney | Year of Graduation | Billing Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| D. Greg Blankinship (partner) | 2002 | $850 | 183.7 | $156,145 |
| Jean Sedlak (associate) | 2009 | $560 | 116.4 | $65,184 |
| Sara Bonaiuto (associate) | 2018 | $300 | 111.1 | $33.330 |
| Scott Terrell (associate) | 2013 | $450 | 125.85 | $56,632.50 |
| Evelyn Ozuna (paralegal) | N/A | $190 | 9 | $1,710 |

Total: $313,001.50

Moreover, these totals underestimate the amount of work Plaintiffs' counsel devoted to this case for several reasons: 1) FBFG exercised its discretion to cut 20 hours from time originally billed to ensure that only time that was efficiently expended is counted; 2) Plaintiffs are not including the substantial time spent by Kaplan Fox or Turk Strauss attorneys, even though that work significantly aided in the prosecution of this action; 3) Plaintiffs are not including more than 80 hours spent finalizing the settlement agreement and preparing this motion after the Parties executed a term sheet on February 26, 2020; and 4) Plaintiffs are not including the time spent on this matter after they first sought approval of the settlement in May 2020.

Contrary to Defendant's unsupported implication, *see* Defendant's Memorandum of Points and Authorities In Opposition to Attorneys' Fees Portion of Motion for Final Approval of Class Action Settlement, ECF No. 49 ("Def. Mem.") at 6, FBFG attorneys did not double bill for time on this case for time that was spent on other cases. All FBFG attorneys are of course instructed to follow precise and ethical billing practices, including maintaining contemporaneous billing records using the firm's computerized billing system, with time entered each day to each case an attorney works on. Blankinship Decl. ¶ 20. The only way time spent on one case could be imputed to another case would be for an attorney to fraudulently engage in double billing. The undersigned attests that never happens at FBFG, and to suggest that FBFG attorneys violated their professional responsibilities without basis is, to say the least, inappropriate. Blankinship Decl. ¶

21.

Moreover, this action was one of the first three power bank cases FBFG filed based on this theory, and because this case immediately preceded to discovery, it was the first case in which substantive discovery was taken, including the first deposition of a corporate defendant regarding power bank capacities.[4]  This case also presented unique issues not present in other cases, including considerations regarding naming SunvalleyTek Chinese parent, and whether it was necessary or possible to obtain discovery from the Chinese entity.  Moreover, this was the first power bank case ever brought asserting a nationwide class based on various California claims against a California subsidiary of a Chinese parent.[5]

Defendant also takes issue with the time expended on pre-suit investigation (93.1 hours).  Def. Mem. at 6.  But this time also includes drafting a detailed eight-count complaint raising statutory claims under three separate California statutes, two New York statutes, similarly consumer protection statutes of eight other states, and common law claims for breach of warranty and unjust enrichment.  ECF No. 1.  Plaintiffs also filed an amended complaint.  ECF No. 20.

Defendant contends that FBFG incurred no research expenses prior to filing the Complaint and therefore could not have expended much pre-suit time.  Def. Mem. at 6.  Not true.  FBFG paid substantial Westlaw charges in June, July, November, and December of 2018, charges which are paid once a month for prior periods.  *See* Blankinship Decl. Ex. 3.  There is no dispute that Plaintiffs engaged an experienced laboratory to perform testing on Defendant's power banks prior to filing the complaint.  *See* Complaint ¶ 19, ECF No. 1.

Defendant contends that 39.8 hours spent on motion practice is not reasonable because there were no motions.  Def. Mem. at 7.  Not so.  This category includes time spent working on

---

[4] In *Mancuso v. RFA Brands LLC, d/b/a MyCharge*, No. 18-06807, ECF. No. 1, Complaint, filed November 13, 2018 (W.D.N.Y.), the court did not deny the defendant's motion to dismiss until April 13, 2020.  Discovery in *Hester v. Walmart, Inc.*, No. 18-05225, ECF. No. 1. Complaint, filed November 14, 2018 (W.D. Ark.) lagged behind discovery in this case.

[5] *Mancuso* involves claims arising under New York law and the laws of other states with similar consumer protection laws, and *Hester* involves claims arising under Georgia law and the laws of other states with similar consumer protection laws.  Other cases were filed well after this action and therefore cannot have resulted in duplicative work.

various stipulations regarding scheduling (ECFs Nos. 11, 22, 28, 33, 40, and 44); preparing for the Rule 16 conference (ECF Nos. 22-23) and Greg Blankinship's travel to and from San Francisco for that conference; work on a proposed protective order (ECF No. 30); and work on a *pro hac vice* application (ECFs No. 13). Spending less than 40 hours on all of these tasks, hearings, and travel times is more than reasonable.

Defendant contends that spending 20.9 hours on discovery of electronically stored information ("ESI") was not reasonable because there was no ESI. Def. Mem. a 7. Not so. Plaintiffs' counsel drafted, and the parties negotiated and stipulated to, a comprehensive and detailed ESI protocol (ECF No. 37), which this Court granted. In addition, Defendant produced ESI, including paper documents converted to electronic images and substantial sales data. Therefore, 20.9 hours for these tasks is reasonable.

Defendant contends that spending 173.45 hours on written discovery was unreasonable. Def. Mem. at 7. Not so. This time consisted of: drafting and serving preservation letters regarding the duty to preserve various forms of ESI and product samples, with conferrals with Defendant on the same issues; preparing initial disclosures; work on interrogatories and requests for production to Defendant;[6] responding to interrogatories and requests for production from Defendant; preparing requests for admission to Defendant and responding to requests for admission from Defendant; numerous conferrals (both written and in person) regarding both party's responses and objection to various discovery requests; work on subpoenas to Amazon and conferring with counsel for same; and work on a proposed evidentiary stipulation. The time spent on these numerous tasks was more than reasonable and efficient.

---

[6] Defendant contends that Plaintiffs' discovery requests are boilerplate requests for CLRA cases. Def. Mem. at 7. Not so. These requests were specifically tailored to the novel discovery issues raised in this case (*see* Donovan Declaration, ECF 49-1, Exhibits J and K), and they were the first set of such requests ever issued by FBFG. Tellingly, Ms. Donovan fails to identify the other power bank case from which she claims to have reviewed similar discovery responses (Donovan Dec. ¶¶ 11 and 12), likely because those requests in that unnamed case were issued after the requests here.

Defendant also complains about the fulsomeness of Plaintiffs' discovery responses. Def. Mem. at 8. However, those responses speak for themselves, as does the fact that Defendant never felt the need to seek the Court's assistance in compelling different responses.

1   Plaintiffs' counsel also spent 20.1 hours on Document Discovery, meaning that FBFG

2   spent less than three days' attorney time reviewing all of the documents produced by the parties

3   in this litigation. That minimal amount of time is more than reasonable and efficient.

4   Similarly, the 103 hours spent for depositions was more than reasonable. Plaintiffs'

5   counsel carefully prepared a Rule 30(b)(6) deposition notice regarding power bank capacity and

6   marketing issues (the first of its kind), and carefully and thoroughly prepared for the deposition

7   itself, again because it was the first such Rule 30(b)(6) deposition concerning power bank

8   capacities and marketing to ever have occurred in any forum (to the best of the undersigned's

9   knowledge). This time also included negotiating issues with Defense counsel regarding the

10   Plaintiffs' depositions and depositions of Defendant's personnel (which were only canceled when

11   the proposed settlement was reached). 103 hours, spent mostly by partner Greg Blankinship with

12   the assistance of a very junior attorney, is entirely reasonable for all of these tasks.

13   Defendant's main argument seems to be that it is not reasonable for a partner to have a

14   junior associate attend a deposition. Def. Mem. at 8. It is well settled that the attendance of a

15   junior associate who assists a more senior attorney in preparing for a deposition is a valuable

16   contribution to the prosecution of a case. *See Genesis Merch. Partners, LP v. Nery's USA, Inc.*,

17   No. 11-CV-1589 JM (WVG), 2013 WL 12094825, at *5 (S.D. Cal. Dec. 6, 2013) ("As a general

18   matter, the court recognizes that depositions are frequently attended by both a partner with

19   significant litigation experience as well as an associate involved in the case. Often, the associate

20   attorney has provided the partner with significant assistance preparing for the deposition and may

21   provide valuable insight during the deposition itself. Additionally, junior associate attorneys may

22   benefit professionally by observing the skills of the more experienced partner as he takes the

23   deposition."); *Flores v. City of Westminster*, No. 110278, 2014 WL 12783201, at *10 (C.D. Cal.

24   Oct. 23, 2014) ("The Court does not find it unreasonable for two attorneys to attend the

25   same deposition, particularly in a complex case like this one.").

26   67.2 hours were also reasonably spent on mediation and settlement. Greg Blankinship

27   traveled to San Francisco from New York and attended a full day mediation, and FBFG prepared

28

a thorough mediation statement that addressed both the merits of the case (including reference to documents produced by Defendant and the lengthy deposition of Mr. Fung) and all of the requirements for class certification.  While that mediation was not successful, there were later negotiations which were time consuming, and the parties negotiated a detailed term sheet.  The time FBFG spent on mediation and settlement was well spent, reasonable and efficient.

Defendant does not appear to seriously contest that spending less than two days (14.8 hours) on expert discovery in a case that hinges on technical electricity issues was unreasonable.

### B.    **FBFG's Rates Are Reasonable.**

Defendant does not contest that Greg Blankinship's hourly rate is unreasonable.  Def. Mem. at 9.  In fact, Judge Karas from the Southern District Of New York recently approved a class action settlement, appointing FBFG class counsel, in which he found that FBFG's rates (including Mr. Blankinship's rate) are reasonable and consistent with the rates of other similarly experienced attorneys.[7]  *See Tardibuono-Quigley v. HSBC Mortgage Corporation (USA) et al*, No. 15-06940, ECF No. 177 at ¶ 13(d) (S.D.N.Y. May 20, 2020).  FBFG has been awarded fees based on its standard hourly rates in numerous prior cases, including in California and the Ninth Circuit.  *See, e.g., IN RE: Zappos.com, Inc., Customer Data Sec. Breach Litig.*, No. 3:12-cv-00325, ECF No. 418 (D. Nev. Dec. 23, 2019) (approving fees including FBFG's hourly rates of $850 for partners, $350-$575 for associates, and $190 for professional staff).  Indeed, in a similar case involving power banks, Judge Selna recently held that FBFG's rates fell within the range that had been previously approved by that court.  *Young v. Mophie Inc.*, No. 8:19-cv-00827, ECF No. 96 at 12 (CD Cal. Nov. 5, 2020).

An hourly rate will be approved as long as "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Miller v. Wise Co., Inc.*, No. 17-0616, 2020 WL 1129863, at *9 (C.D. Cal. Feb. 11,

---

[7] Rates charged by New York and San Francisco attorneys are similar.  *See Keyes v. Sec. Check, LLC*, No. C 07-3598 PJH (JL), 2008 WL 11388426, at *4 (N.D. Cal. July 15, 2008), *report and recommendation adopted*, No. C 07-3598 PJH, 2008 WL 11388416 (N.D. Cal. Dec. 3, 2008).

2020) (citing *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

Here, FBFG's hourly rates are consistent with prevailing rates in the community of attorneys with similar experience in complex commercial litigation. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (finding rates ranging from $355 to $1,095 per hour for partners and associates were within the range of prevailing rates in the Northern District); *Vasquez v. Kraft Heinz Food Co.*, No. 16-2749, 2020 WL 1550234, at *7 (S.D. Cal. Apr. 1, 2020) (finding reasonable rates of $200 per hour, $400 per hour, and $900 for paralegals, junior attorneys, and experienced attorneys, respectively). As the declaration of Plaintiffs' Counsel set forth, FBFG's rates are commensurate with their level of expertise and experience and match the prevailing rates in the Northern District of California. *See* Blankinship Decl. ¶23.

As a 2018 graduate of the University of Connecticut School of Law, Ms. Boniauto's rate of $300 per hour is reasonable. *Hefler v. Wells Fargo & Co.*, No. 16-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving rates of $400 to $650 for associates); *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (Gilliam, J.) (finding reasonable rates of "$365 to $950 per hour for attorneys"). As a 2013 graduate from University of Virginia School of Law who served a year as a clerk in the Central District of California and worked as a county district attorney before joining FBFG, Mr. Terrell's $450 rate is more than reasonable. *Id.* As a 2009 graduate from the University of California School of Law, Ms. Sedlak's $560 rate was also reasonable. *Id.*

**C.    Even If The Court Reduces FBFG's Lodestar, Plaintiffs'
Fee Request Is Reasonable Because Their Counsel Earned A Multiplier.**

FBFG's lodestar is more than reasonable. FBFG is not seeking a multiplier on its lodestar even though it would be entitled to one given the novelty of this litigation and the superlative result achieved by the Settlement. *See In re HP Power Plug and Graphic Card Litig.*, No. C06-2254 RMW, 2008 WL 2697192 (N.D. Cal. Jul. 7, 2008) (awarding a 1.24 multiplier); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011)

(awarding 4.3 multiplier). Applying FBFG's hourly rates to the hours expended yields a lodestar of $313,001.50, and therefore an award of $313,000 is fair and reasonable.

Indeed, it is a first of its kind settlement that may well be the catalyst that changes the manner in which the power bank industry provides information to consumers regarding their products' capacities. Wrestling such a significant change in labeling from a major player in the power bank market is a superlative result, and in such circumstances, a lodestar multiplier is warranted. *See, e.g., White v. Experian Info. Sols., Inc.*, No. 05-1070, 2011 WL 2971957, at *4 (C.D. Cal. July 15, 2011) (reversed on other grounds) ("Plaintiff's case presented largely novel, complex questions. Ascertaining a solution to these complicated problems therefore required significant skill. Injunctive Relief Class Counsel rose to the occasion, all the while operating under a contingent fee arrangement that offered no guarantee of compensation. Use of a 1.9 multiplier is appropriate under these circumstances.").

Even in the context of an injunctive relief only settlement, a lodestar multiplier of between 1 and 4 is customary. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471, 2014 WL 888665, at *6-7 (S.D. Cal. Mar. 5, 2014) (awarding fees in injunctive relief only settlement and holding that "courts may enhance the lodestar figure with a multiplier" and noting that "[t]he customary range for multipliers is between 1.0 and 4.0."). Even if Defendant is right (it is not) and FBFG's lodestar should be reduced to between $105,000 and $126,000, a $313,000 fee only represents a multiplier of between 2.48 and 2.98.

## VII.   THE COURT SHOULD APPROVE REIMBURSEMENT OF EXPENSES

Plaintiffs' Counsel also seek reimbursement of litigation expenses up to $20,000, which Defendant has agreed not to contest. *See* Blankinship Decl., Ex. 2. These expenses were reasonably incurred and necessary to the prosecution of this Action. *See* Blankinship Decl. ¶ 26. In fact, FBFG incurred $20,084, *id,* and Kaplan Fox incurred $1,159.32. *See* King Decl., ECF No. 48-2. An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). To support an expense award, Plaintiffs need only file an "itemized

list of their expenses by category and the total amount advanced for each category in order for the Court to assess whether the expenses are reasonable." *Lilly,* 2015 WL 2062858, at *6. That itemized list can be found at Blankinship Decl. Ex. 2.

In this Circuit, "reasonable expenses, [even] though greater than taxable costs, may be proper." *Harris,* 24 F.3d at 20. Reimbursement of litigation expenses is warranted whenever "[t]here is no showing or suggestion that the expenses incurred were excessive or unnecessary." *Miller,* 2020 WL 1129863, at * 13. Here, "all [expenses] are ones commonly and necessarily incurred in the litigation of claims like those asserted in this action." *Id.; Lilly,* 2015 WL 2062858, at *6 ("Roughly half of class counsel's expenses ($7,118.30) stemmed from mediation fees, which the Court finds reasonable in light of the expert mediator hired to assist in settlement negotiations and the successful result of the negotiations. Similarly, the Court finds reasonable the requested travel costs, document expenses, research costs, and filing fees. Based on the declarations of counsel, the Court awards the requested legal expenses of $14,326.87.").

Here, all the expenses were reasonable and necessary to the prosecution of this litigation and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement. These expenses include travel related to court appearances, a mediation, and one deposition, research costs, and filing fees. *See Rodriguez v. Bumble Bee Foods, LLC,* No. 17-2447, 2018 WL 1920256, at *8 (S.D. Cal. Apr. 24, 2018) ("Class Counsel's expenses include[d] filing fees, mailing costs, meals, airfare, and Uber transportation costs," and the Court found that Class Counsel's out-of-pocket costs were "reasonably incurred in connection with the prosecution of th[e] litigation, were advanced by Class Counsel for the benefit of the class, and should be reimbursed in full in the amount requested.").

## VIII. THE COURT SHOULD APPROVE PLAINTIFFS' SERVICE AWARDS

Class Counsel respectfully request that the Court approve the payment of incentive awards to Plaintiffs Burgos and Mahavongtrakul in the amount of five thousand dollars ($5,000) each. Pursuant to the Settlement, Defendant has agreed to not object to Plaintiffs' request for these awards. The requested payments are well deserved and fall well within the range of incentive

awards approved in prior cases. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton,* 327 F.3d at 977. They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez,* 563 F.3d at 958-59 (internal citation omitted). "In this circuit … $5,000 is presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.,* 303 F.R.D. 326, 335 (N.D. Cal. 2014); *see also Harris v. Vector Marketing Corp.,* No. C-08- 5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted). Plaintiffs' request of $5,000 each should be granted. Plaintiffs each reviewed, and discussed with Plaintiffs' Counsel, the pleadings and discovery demands, and they assisted in responding to those requests. Blankinship Decl. ¶ 13. Plaintiffs also conferred with Class Counsel regarding the settlement negotiations, and always encouraged Class Counsel to obtain the best possible result for the absent class members. *Id.* These actions warrant an award of attorneys' fees.

## IX.    **CONCLUSION**

For all the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Settlement, enter the accompanying proposed Final Approval Order, and approve the requested attorneys' fees and incentive awards to be paid by Defendant.

1
                       Respectfully submitted,

2
                       **FINKELSTEIN, BLANKINSHIP,**
                       **FREI-PEARSON & GARBER, LLP**

3

4
DATED: March 29, 2021        By: /s/ *D. Greg Blankinship*
                             D. Greg Blankinship

5
                       D. Greg Blankinship (*pro hac vice*)
                       One North Broadway, Suite 900

6
                       White Plains, New York 10601
                       gblankinship@fbfglaw.com

7
                       Telephone: (914) 298-3290
                       Facsimile: (914) 522-5561

8
                       **KAPLAN FOX & KILSHEIMER LLP**

9
                       Laurence D. King (SBN 206423)
                       Mario M. Choi (SBN 243409)

10
                       1999 Harrison Street, Suite 1560
                       Oakland, CA 94612

11
                       Telephone:  415-772-4700
                       Facsimile:   415-772-4707

12
                       *lking@kaplanfox.com*
                       *mchoi@kaplanfox.com*

13

14
                       *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28