1
2
3
4           UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6
7   INES BURGOS, et al.,                    Case No. 18-cv-06910-HSG
8                 Plaintiffs,               **ORDER GRANTING MOTION FOR**
                                            **FINAL SETTLEMENT APPROVAL,**
9           v.                              **AND GRANTING IN PART AND**
                                            **DENYING IN PART ATTORNEYS'**
10  SUNVALLEYTEK INTERNATIONAL,             **FEES, COSTS, AND INCENTIVE**
    INC.,                                   **AWARDS**
11
                  Defendant.                Re: Dkt. No. 61
12

13          Pending before the Court are Ines Burgos and Mongkol Mahavongtrakul's ("Plaintiffs")

14   motion for final approval of class action settlement, for attorneys' fees, costs and expenses, and a

15   class representative service award.  Dkt. No. 61 ("Mot.").  Defendant Sunvalleytek International,

16   Inc. ("Sunvalleytek" or "Defendant") opposes the motion for attorneys' fees.  Dkt. No. 49

17   ("Opp.").  The Court held a hearing on Plaintiffs' initial approval motion on August 20, 2020.  *See*

18   Dkt. No. 51.  At the hearing, the Court directed the parties to file a supplemental memorandum

19   regarding the class definition and proposed class notice.  *Id.*  On September 24, 2020, Plaintiffs

20   filed a supplemental memorandum, requesting approval of the settlement as amended, ordering

21   that notice be disseminated, and setting a date for a final fairness hearing.  Dkt. No. 54.  On

22   December 11, 2020, the Court granted preliminary approval.  Dkt. No. 57.  On April 22, 2021, the

23   Court held a final approval hearing.  For the following reasons, the Court **GRANTS** the final

24   approval motion.  The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiffs'

25   motion for attorneys' fees, costs, and incentive awards.

26   **I.    BACKGROUND**

27      **A.    Factual Background**

28       Under the RAVPower label, Sunvalleytek manufactures, markets, and distributes for sale

nationwide power banks ("Power Banks") that consumers use to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and cellphones. Dkt. No. 20 ("FAC") ¶¶ 1-3. The capacity of Power Banks is measured in milliampere-hours ("mAh"). *Id*. ¶ 3. The amount of mAh available to charge PEDs controls how frequently consumers may charge their PEDs and how much power is available to the consumer for each charge. *Id*. Plaintiffs allege that the products' actual capacities are substantially lower than what Sunvalleytek represents. *Id*. ¶ 19.

Because the internal circuitry in a Power Bank uses power that cannot be used to recharge a PED, and owing to voltage conversion losses, Plaintiffs contend that a Power Bank is incapable of delivering all of the internal battery capacity. Dkt. No. 48-1 ¶¶ 7-8. Plaintiffs also contend that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells that have that mAh capacity. Dkt. No. 48 2:10-11.

Accordingly, on November 14, 2018, Plaintiffs filed this class action complaint against Defendant, asserting violations of the California Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"); violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; violations of the New York General Business Law New York ("GBL") §§ 349, 350; violations of materially identical state consumer protection statutes; breach of express warranty; and unjust enrichment. FAC ¶¶ 38-114.

**B.     Settlement Agreement**

       **i.     Original Terms**

Following formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement. Dkt. No. 48-1 ("SA"). The key terms were as follows:

Settlement Benefits:

> A. As part of the consideration for this Agreement, Sunvalleytek agrees to
> 1. Change the product label to say the words "battery capacity" in conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery cells of the Power Bank)
> 2. Change the user guide specifications to say the words "battery capacity" in conjunction with the mAh number (where the mAh number is the sum of the nominal rated capacity of the internal battery

United States District Court
Northern District of California

cells of the Power Bank)

3. Change the product description in the Amazon listings to convey that the specified mAh is the sum or total of the nominal rated capacity of the internal battery cells; and

4. Change the Amazon listing the bullet points to say "xxxx mAh internal battery capacity" or "internal battery capacity xxxx mAh" (where xxxx represents the number that is the sum of the nominal rated capacity of the internal battery cells in the power banks.)

SA § IV.A

   <u>Release</u>:

"Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature that could reasonably have been, or in the future might reasonably be asserted by, Plaintiffs or Defendant, either in the Action or in any action or proceeding in this Court or in any other court or forum, against the Released Parties, including damages, costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity arising out of or relating to legal claims made by Plaintiffs out of [sic] or relating to the allegations in the Action or Defendant's labeling, marketing, advertising, packaging, promotion, manufacture, sale, and distribution of all Covered Products as alleged in the Action. For avoidance of doubt, this includes, all such claims that relate in any way to this Action or the capacity of internal cells of the batteries as measured in mAh, statements that were or are contained on the Covered Products or otherwise relate to the labeling, marketing, advertising, packaging, promotion, manufacture, sale, and distribution of the Covered Products with respect to capacity in conjunction with mAh, including future identical statements about Covered Products, which have been asserted or which could reasonably have been asserted by the Releasing Parties in the Action, including but not limited to claims alleging any type of bad faith, frivolous or vexatious litigation, fraud, misrepresentation, breach of warranty, unjust enrichment, or unfair trade practice under any state or federal law (including all claims for injunctive or equitable relief), but not including claims for personal injury or attorney's fees or costs (other than the attorney's fees and costs the Court may award pursuant to this Settlement).

SA § V.B.1.  The "Released Parties" are defined as:

Plaintiffs and Sunvalleytek, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns.  It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such

Released Parties are intended third-party beneficiaries of the Agreement.

*Id*. § V.B.2.  The "Releasing Parties" are defined as "Plaintiffs Ines Burgos and Mongkol

Mahavongtrakul and Sunvalleytek." *Id*. § V.B.3.  In addition, "[a]bsent class members or members of the putative class or the settlement class shall not release any claims, and are not bound in any way, under this Settlement." *Id.* § V.F.

Class Notice:  There is no notice provided to class members.

Opt-Out Procedure:  There is no opt-out procedure in the settlement agreement.

Incentive Award:  The Named Plaintiffs applied for incentive awards of $5,000.  *Id*. § VI.E.

Attorneys' Fees and Costs:  Class Counsel shall make an application for an award of Attorneys' Fees for work on this case (not to include any work on any related cases) not exceeding $315,000.  Defendant may oppose that application except that it shall not propose to pay an amount less than $45,000.  *Id*. § VI.B.

###    ii.    Amended Terms

At the August 20, 2020 hearing on the motion, the Court ordered the parties to meet and confer regarding the class definition and class notice.  *See* Dkt. No. 51.  The parties then agreed to an amended settlement agreement with a new class definition and class notice plan.  Dkt. No. 54.

The amended terms are as follows:

Class Definition: The Settlement Class is defined as:

> All consumers who have purchased any of the Covered Products in the United States.

Dkt. No. 54-2. [1]

Class Notice:  The proposed notice plan included a notice posted in a prominent place on the websites of Plaintiffs' counsel 60 days before the Court holds a telephonic fairness hearing regarding approval of the Settlement Agreement.  *Id.*  The proposed posting included the date and subject matter of the upcoming fairness hearing; the settlement benefits; the requested attorneys' fees and costs; and an explanation that the proposed settlement "does not result in waiver of any

---

[1] "Covered Products" are defined under the Settlement Agreement as "any size of any of the Power Banks designed for the primary purpose of use for portable charging of mobile phones, such devices consisting of a battery cell or cells, enclosed in a casing."  SA § II.A.7.

United States District Court
Northern District of California

1    claims members of the proposed class might have, for example, for financial damages." *Id*. Ex. A.

2    The posting also invited class members to participate in the hearing and to submit written

3    comments by 15 days before the hearing date. *Id.*  Defendant also agreed to post a banner at the

4    top of its website with information about the hearing and opportunity to participate with a link to

5    the notice page of Plaintiffs' counsel. *Id.* Ex. B.

6    ## II.    LEGAL STANDARD

7        The plaintiff bears the burden of showing by a preponderance of the evidence that class

8    certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v.*

9    *Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  First, a plaintiff

10   must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

11   typicality, and adequacy of representation.  *Id.* at 349.  Second, she must establish that at least one

12   of the bases for certification under Rule 23(b) is met.

13       Under Rule 23(a), a party intending "to certify a class must demonstrate that '(1) the class

14   is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

15   common to the class; (3) the claims or defenses of the representative parties are typical of the

16   claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

17   the interests of the class.'"  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th

18   Cir. 2010).

19       Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on

20   grounds that apply generally to the class, so that final injunctive relief or corresponding

21   declaratory relief is appropriate respecting the class as a whole."  "Rule 23(b)(2) applies only

22   when a single injunction . . . would provide relief to each member of the class."  *Wal-Mart Stores,*

23   *Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  The "key" to finding a class under Rule 23(b)(2) "is the

24   indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

25   is such that it can be enjoined . . . only as to *all* of the class members or as to *none* of them."  *Id.*

26   (citation and internal quotation marks omitted) (emphasis added).  Rule 23(b)(2) "does not

27   authorize class certification when each individual class member would be entitled to a *different*

28   injunction . . . against the defendant," or "to an individualized award of monetary damages."  *Id.* at

United States District Court
Northern District of California

360-61 (original emphasis).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (citations and quotations omitted).

## III.    DISCUSSION

### A.    Final Approval Of Class Settlement

#### i.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement on December 11, 2020, this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval. Dkt. No. 57 ("Preliminary Approval Order") at 6-9.

#### ii.    Class Notice

Under Rule 23(c)(2), "any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." *See* Fed. R. Civ. P. 23(a) (emphasis added). Additionally, Rule 23(h) requires that notice of any motion for attorneys' fees "*must* be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1) (emphasis added).

Here, Plaintiffs and Defendant initially contended that class notice was not required

because the settlement provides for only injunctive relief.  *See* Preliminary Approval Order at 9.

The Court disagreed and suggested that the parties submit an amended settlement that provided for

adequate classwide notice under the circumstances presented (i.e., an injunctive relief-only

settlement that does not require absent class members to waive any rights).  *Id*. at 9-10.  The Court

now finds that the parties implemented the previously approved notice plan; the class members

received adequate notice; and no objections to the proposed settlement have been received.  *See*

Dkt. No. 61-1 ¶ 12; Dkt. No. 62 ¶¶ 2-3.

### iii.    Settlement Approval

"The claims, issues, or defenses of a certified class may be settled . . .  only with the court's

approval."  Fed. R. Civ. P. 23(e).  Approval of a class settlement is appropriate when plaintiffs

must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F.

Supp. 2d 848, 851 (N.D. Cal. 2010).  Additionally, difficulties and risks in litigating weigh in

favor of approving a class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the

settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ,

2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted)

With one exception, no facts have changed that would affect the Court's previous findings

in its preliminary approval order; therefore, this order incorporates by reference its prior analysis

regarding the (1) the strength of Plaintiffs' case and litigation risk; (2) risk of maintaining class

action status; (3) extent of discovery completed and stage of proceedings; and (4) experience and

views of counsel.  Preliminary Approval Order at 10-12.

The one exception is that class members have now had the opportunity to react to the

proposed settlement.  The lack of any objections by class members to the proposed settlement—

during the notice period or at the final fairness hearing—supports final approval.  *See Nat'l Rural*

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("[T]he absence

of a large number of objections to a proposed class action settlement raises a strong presumption

that the terms of a proposed class settlement action are favorable to the class members."); *In re*

*Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs

1    and objections in comparison to class size is typically a factor that supports settlement approval.").

2        After considering and weighing the relevant factors, the Court finds that all the factors

3    favor approval of the settlement.  Accordingly, the motion for final approval of the class action

4    settlement is **GRANTED**.

5    **B.    Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment**

6        In its motion, Class Counsel asks the Court to approve an award of $313,000 in attorneys'

7    fees and $20,000 in costs.  Mot. at 16-24.  Class Counsel also seeks a $5,000 incentive award for

8    each of the Named Plaintiffs.  *Id.* at 24-25.  Defendant does not object to reimbursement of

9    reasonable expenses of up to $20,000, or to the service awards to each Plaintiff in the amount of

10   $5,000.  Opp. at 3.  Defendant does object to the request for attorneys' fees, arguing that the fees

11   should be reduced to about one-third to one-half of the amount sought because the benefit

12   conferred on the class was minimal; the case did not involve novel, complex issues; and the hours

13   claimed were excessive.  *Id.* at 4-10

14       **i.    Attorneys' Fees**

15       **a.    Legal Standard**

16       "In a certified class action, the court may award reasonable attorney's fees and nontaxable

17   costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  For a state

18   law claim—like this one—state law also governs the calculation of attorneys' fees.  *See Vizcaino*

19   *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Nevertheless, the Court may still look to

20   federal authority for guidance in awarding attorneys' fees.  *See Apple Computer, Inc. v. Superior*

21   *Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority

22   for guidance on matters involving class action procedures.").

23       Under California law, the "percentage of fund method" is proper in class actions.  *Laffitte*

24   *v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016).  In addition, "trial courts have discretion to

25   conduct a lodestar cross-check on a percentage fee."  *Id.*  The "lodestar figure is calculated by

26   multiplying the number of hours the prevailing party reasonably expended on the litigation (as

27   supported by adequate documentation) by a reasonable hourly rate for the region and for the

28

United States District Court
Northern District of California

experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506.

### b. Discussion

Plaintiffs' counsel seeks $313,000 in fees. *See* Mot. at 16-24. In the Settlement Agreement, the parties did not agree on the reasonable amount of fees, instead agreeing that the Court would make that decision in conjunction with the motion for approval of the settlement; however, Plaintiffs agreed they would not seek more than $315,000 and Defendant agreed it would not propose less than $45,000 in attorneys' fees. SA § VI.

In injunctive relief class actions, courts often use a lodestar calculation, beginning with multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hanlon v. Chrysler Corp.*, 150 F.3d at 1029, overruled on other grounds by *Dukes*, 564 U.S. 338. The number of hours and the rates claimed should be supported by adequate documentation and other evidence, and then the resulting figure may be adjusted upward or downward based upon reasonableness. *Hanlon*, 150 F.3d at 1029. Factors considered include the benefits obtained for the class (monetary and nonmonetary), whether the results achieved were exceptional, the complexity and novelty of the issues, risks of litigation and non-payment, reasonableness of hours, and customary fees and rates for similar cases. *In re Bluetooth*, 654 F.3d at 941-942.

In calculating its lodestar, Plaintiffs' counsel contends that it collectively expended a combined total of approximately 546.05 hours. Dkt. No. 61-1 ("Blankinship Decl.") at 5. Defendant proposes that the "reasonable" attorneys' fees in this case should be reduced to 30-40% of the sum requested, resulting in an attorneys' fees award between $105,000 and $126,000. Opp. at 5. Initially, Plaintiffs' counsel did not provide detailed timesheets showing work by legal professionals detailed by date, time, and activity, and instead only provided a chart specifying the hours spent by legal professionals in particular categories, with the hours totaling 546.05. Blankinship Decl. at 5. This made it difficult to fully evaluate the work performed. Under Court

1    order to provide the detailed underlying billing records that support their motion for attorneys'

2    fees, Plaintiffs' counsel produced 17 pages of billing records that list attorney name, date, time

3    billed, task description, and task category.  Dkt. No. 65-1.  However, as discussed below, many of

4    the entries also fail to provide sufficient detail to substantiate as reasonable the time spent on a

5    particular task.

6            As Defendant accurately points out, this lack of detail is a particular concern in this case

7    where Plaintiffs' counsel was simultaneously pursuing five other cases claiming the very same

8    power bank "mAh" representation claims against various companies in this field.  Opp. at 6.

9    Plaintiffs' counsel brought this action on November 14, 2018.  Plaintiffs' counsel filed five

10   additional cases making the same allegations against other companies selling power banks

11   between November 13 and December 6, 2018, and two more cases in 2019.  Declaration of

12   Kimberly Donovan (Dkt. No. 49-1, "Donovan Decl.") Ex. A-G.  Plaintiffs' counsel claims a total

13   of 93.1 hours of attorney time for its pre-suit investigation and drafting of the complaint.  Dkt. No.

14   48-1 at 53.  Yet a comparison of the complaints show that Plaintiffs' counsel used nearly identical

15   complaints in the different actions.  *Compare, e.g.,* Dkt. No. 1 ¶¶ 1-5, 10-21 with Dkt. No. 49-2 ¶¶

16   1-5, 9-17 and Dkt. No. 49-5, ¶¶ 1-5, 10-20.  Plaintiffs' counsel even used the same named

17   Plaintiff, Mr. Mahavongtrakul, in one of the other complaints.  Dkt. No. 49-5.  Because of the

18   substantial overlap between the Plaintiffs' counsel's various lawsuits in both the factual

19   allegations and the legal theories, the Court finds persuasive Defendant's argument that there must

20   have been substantial duplicative work for these cases, and it would be unreasonable to apportion

21   all the overlapping work to Defendant.[2]  Opp. at 6.  Plaintiffs' counsel cut 20 hours for

22   inefficiencies, but there is no indication how this number was calculated.  Blankinship Decl. ¶ 22.

23           The billing records are similarly unhelpful as entries such as the following provide no basis

24

25   _____

26   [2] To be clear, the Court is not suggesting that fees for pre-filing legal research should be
     "allocated" across different cases as implied by Plaintiffs' counsel in oral argument at the final
27   fairness hearing.  Nor is the Court suggesting that Plaintiffs' counsel engaged in double billing
     with respect to the duplicative complaints.  Instead, the Court's finding addresses the
28   reasonableness of the amount of time claimed in this case for research and preparation of the
     complaint given that (1) this was not the first case filed; and (2) at least five other, nearly identical,
     complaints were filed within several weeks of this one.  *See* Dkt. No. 66 at 2; Dkt. No. 1.

United States District Court
Northern District of California

for the Court to distinguish between the pre-suit investigation and drafting specific to this case and the investigation and drafting of the other, nearly identical complaints:

| Name | Date | Time | Description | Task |
|------|------|------|-------------|------|
| Jean Sedlak | 6/3/2018 | 1.4 | RESEARCHED CLRA AND BREACH OF WARRANTY CLAIMS AND RESEARCHED NOTICE REQUIREMENT | 1 |
| Jean Sedlak | 6/14/2018 | 4.2 | RESEARCHED NOTICE AND CLASS CERTIFICATION AND BREACH OF WARRANTY FOR MULTIPLE STATES | 1 |
| Jean Sedlak | 6/17/2018 | 5.1 | RESEARCHED BREACH OF WARRANTY AND CONSUMER CLAIMS; REVIEWED BATTERY WARRANTY | 1 |
| Jean Sedlak | 6/20/2018 | 6 | DRAFTED COMPLAINT; DRAFTED NOTICE | 1 |
| Jean Sedlak | 6/27/2018 | 5.1 | REVIEWED LAW ON MMWA CLAIM; REVIEWED NOTICE | 1 |
| Greg Blankinship | 11/5/2018 | 3.1 | WORK ON COMPLAINT AND RESEARCH RE MULTI-STATE PLEADINGS FOR SAME | 1 |
| Greg Blankinship | 11/12/2018 | 2.5 | WORK ON COMPLAINT | 1 |
| Greg Blankinship | 11/14/2018 | 1.8 | WORK ON COMPLAINT | 1 |

Dkt. No. 65-1.  The Court finds that the proximity in time of Plaintiffs' counsel's lawsuits, the similarity in the allegations and legal theories, the nearly identical language in the various complaints, and the lack of specificity in the billing records make a reduction in attorneys' fees for pre-suit investigation and drafting appropriate.

Plaintiffs' Counsel has also block billed substantial time for travel:

| Name | Date | Time | Description | Task |
|------|------|------|-------------|------|
| Greg Blankinship | 2/11/2019 | 8.7 | TRAVEL TO SAN FRANCISCO FOR RULE 16 CONFERENCE AND PREPARE FOR SAME | 2 |
| Greg Blankinship | 2/12/2019 | 3.1 | ATTEND RULE 16 CONFERENCE AND PREPARE FOR SAME AND TRAVEL TO SAME | 2 |
| Greg Blankinship | 2/13/2019 | 7.2 | RETURN TRAVEL TO NEW YORK FROM RULE 16 CONFERENCE; WORK ON PROPOSED SCHEDULE | 2 |
| Greg Blankinship | 4/16/2019 | 6.9 | TRAVEL TO SAN FRANCISCO FOR 30B6 DEPOSITION AND PREPARE FOR SAME | 7 |

| Sara Bonaiuto | 4/17/2019 | 9.8 | TRAVEL TO DEPOSITION IN CALIFORNIA | 7 |
|---|---|---|---|---|
| Sara Bonaiuto | 4/18/2019 | 7.7 | 30(B)(6) DEPOSITION AND TRAVEL TO DEFENSE COUNSEL'S OFFICE | 7 |
| Greg Blankinship | 4/19/2019 | 7.1 | RETURN TRAVEL FROM 30B6 DEPOSITION | 7 |
| Sara Bonaiuto | 4/19/2019 | 15.3 | TRAVEL HOME FROM 30(B)(6) DEPOSITION | 7 |
| Greg Blankinship | 7/8/2019 | 7.4 | TRAVEL TO SAN FRANCISCO FOR MEDIATION AND PREPARE FOR SAME | 3 |
| Greg Blankinship | 7/10/2019 | 7.1 | RETURN TRAVEL FROM MEDIATION AND WORK ON DISCOVERY PLAN IN LIGHT OF FAILURE OF SAME, INCLUDING IDENTIFYING DISCRETE DOCUMENTS AND DATA NEEDED FOR CLASS CERTIFICATION IN LIGHT OF DISCOVERY REQUESTS TO DATE; WORK ON NEXT SET OF DISCOVERY REQUESTS | 5 |

Dkt. 65-1.  Courts in this circuit and district have frequently reduced travel time by half to create a reasonable rate.  *See, e.g.*, *In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1298–99 (9th Cir. 1994) (finding the district court did not err in reducing attorney travel time by half where the "attorneys generally billed the entire duration of the time spent in transit"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 6903, 2020 WL 2086368, at *8 (N.D. Cal. Apr. 30, 2020).  Here, Plaintiffs' Counsel often block billed for travel to and participation in a conference or deposition, without differentiating between the travel and substantive components.  In the absence of an explanation regarding what time was spent traveling versus attending the hearing, the Court finds that a reduction in this time of fifty percent is appropriate under the circumstances.

The Court is also concerned with the 173.45 attorney hours claimed for Written Discovery, plus an additional 20.1 hours listed as "Document Discovery."  Dkt. 48-1 at 53.  As Defendant points out, Plaintiffs served only one set of seven (7) interrogatories and one set of thirty-eight (38) requests for production of documents.  Dkt. No. 49-9; Dkt. No. 49-10.  The interrogatories in this case are also almost identical to the interrogatories propounded in another of Plaintiffs' counsel's power bank cases.  Dkt. No. 49-1 ("Donovan Decl.") ¶ 11.  Defendant propounded a first set of interrogatories to Plaintiffs, consisting of 15 interrogatories, and received minimal

12

responses showing minimal facts, information, or support for Plaintiffs' claims.  Dkt. No. 49-12.

Defendant propounded two additional sets of interrogatories to each of the Plaintiffs, one

containing seven requests and one containing three, and Plaintiffs never responded to these

requests.  Donovan Decl. ¶ 15.  Even though Plaintiffs' never responded to the second set of

discovery requests, Plaintiffs' counsel claims that attorney Scott Terrell spent 14 hours on January

13, 2020 working on the responses to those requests, at least in part, with an additional 5.6 hours

on January 14, 2020 finalizing those responses:

| Name | Date | Time | Description | Task |
|---|---|---|---|---|
| Scott Terrell | 1/13/2020 | 5.5 | DRAFTING RESPONSES TO DEF. SECOND SET OF DISCOVERY REQUESTS FOR MR. MAHAVONGTRAKUL AFTER SPEAKING WITH HIM | 5 |
| Scott Terrell | 1/13/2020 | 8.5 | DRAFTING RESPONSES TO DEF. SECOND SET OF DISCOVERY REQUESTS FOR MS. BURGOS AFTER SPEAKING WITH HER, PREPARING AMAZON SUBPOENA, ASSESSING DISCOVERY NEEDS | 5 |
| Scott Terrell | 1/14/2020 | 5.6 | SENDING AMAZON SUBPOENAS AND FINALIZING DISCOVERY RESPONSES | 2 |

Dkt. No. 65-1.  Again, this appears to be excessive given that Defendant did not receive responses to

their second set of discovery requests.

The parties also conducted a single deposition during the litigation, consisting of a one

half-day Rule 30(b)(6) deposition of Defendant's representative in California that Defendant's

counsel represents lasted 2.5 hours.  The Court agrees with Defendant that the 103 hours billed to

this single, short deposition are excessive.  Dkt. No. 48-1 at 53.  In particular, the Court finds

excessive the nearly 54 hours charged by Mr. Blankinship for a single partial day deposition by an

experienced litigator billing $850 per hour.  *Id.*  Based on the travel billing records above, it

appears that a significant portion of the 103 hours billed for this deposition was travel time,

including 25.1 hours billed by Sara Bonaiuto and 14 hours for Mr. Blankinship.  Dkt. No. 65-1.

Plaintiffs' counsel also claims 39.8 hours of "Motion Practice and Hearings."  Dkt. No. 48-

1 at 53.  There were no motions filed in this case.  There was one case management conference.

United States District Court
Northern District of California

13

1     Again, a significant portion of the billed time appears to be travel time with Mr. Blankinship

2     billing 15.9 hours for travel to and from the "RULE 16 CONFERENCE."  Dkt. No. 65-1.

3          The final category of concern is Plaintiffs' counsel's claim for 67.2 hours of Mediation and

4     Settlement work.  Dkt. No. 48-1 at 53.  The parties engaged in a mediation and negotiated

5     settlement, but 67 hours is more time than the Court would expect based on a partial day

6     mediation and the time counsel spent in negotiations.  Donovan Decl. ¶ 20.  The Court also notes

7     that most of the issues in this case were undisputed with the parties agreeing as to how Defendant

8     advertised, promoted, and labelled its power bank products with mAh representations based upon

9     the sum of the internal batteries contained in the power bank devices.  The main point of

10    contention was whether Defendant's advertising and labeling was deceptive because a reasonable

11    consumer would understand the mAh representations to refer to the actual charging capacity that

12    would be available to be transmitted to a consumer's device.

13         Considering the procedural posture of the case, the amount of substantive litigation, the

14    minimal issues in dispute, Plaintiffs' counsel's duplicative pleadings, the lack of motion practice,

15    the percentage of hours billed to travel, and the minimal discovery, the Court finds that the

16    number of hours billed by Plaintiffs' counsel is excessive.[3]  The Court finds that the above

17    amounts are especially disproportionate given the lack of any cash distribution to class members,

18    and finds that the total benefits to the class do not justify the fees sought.  *See Roes*, 944 F.3d at

19    1056 ("[T]he district court had an obligation to question the disproportionate cash distribution to

20    attorneys' fees, substantively address concerns that the settlement value was inflated, and clearly

21    explain why the total benefits to the class justified the fees awarded.") (internal citations and

22

23    _____

24    [3] With respect to hourly rates, the rates requested are between $300-$560 for associates and $850
      for partners.  Mot. at 17.  These numbers yield a lodestar of $313,001.50, meaning that the
25    requested amount of $313,000 is approximately equal to the lodestar.  The Court finds that the
      billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with
26    prevailing rates in this district for personnel of comparable experience, skill, and reputation.  *See,*
      *e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal.
27    Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for
      associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No.
28    2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from
      $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable
      "given the complexities of this case and the extraordinary result achieved for the Class").

United States District Court
Northern District of California

quotations omitted).  The Court finds that Plaintiffs' counsel's requested fees are unreasonable and

reduces Plaintiffs' counsel's attorney's fees to one-half of the lodestar amount.  Accordingly, the

Court **GRANTS IN PART** Plaintiffs' counsel's motion for attorneys' fees in the amount of

$156,500.00.[4]

### ii.    Attorneys' Costs

Class counsel is entitled to recover "those out-of-pocket expenses that would normally be

charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations

omitted).  Here Plaintiffs' counsel seeks reimbursement of $20,000 in out-of-pocket costs and

submitted a table summarizing the costs and expenses incurred.  Dkt. No. 61-3.  These expenses

include professional service fees (for experts and investigators), travel fees, and discovery-related

fees. *Id*.  The Court is satisfied that these costs were reasonably incurred and **GRANTS** the

motion for costs in the amount of $20,000.

### iii.    Incentive Award

Class Counsel requests an incentive award of $5,000 for each of the Named Plaintiffs.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977;

*Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  They are

designed to "compensate class representatives for work done on behalf of the class, to make up for

financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.  Nevertheless,

the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive

awards to determine whether they destroy the adequacy of the class representatives . . . ."

*Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations

omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to

absent class members." *Id*.  The district court must evaluate an incentive award using "relevant

factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree

to which the class has benefitted from those actions, . . . [and] the amount of time and effort the

---

[4] The Court also finds that no lodestar multiplier is warranted in light of the same factors discussed above.

United States District Court
Northern District of California

1  plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

2  　　In determining the reasonableness of a requested incentive award, some courts have

3  considered, among other factors, the proportionality between the incentive award requested and

4  the average class member's recovery.  *See Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019

5  WL 2077851, at *8 (N.D. Cal. May 10, 2019).  The Court finds that Plaintiffs' request for a

6  $5,000 service award for each of the Named Plaintiffs is unreasonable given that class members

7  are not receiving a monetary payment.  Further, there is no evidence of anything more than

8  minimal work done by Plaintiffs.  They were not deposed, they have presented only sparse details

9  about what they actually did, and they do not even include any estimate of hours spent working on

10  the case.[5]  Accordingly, the Court **DENIES** the request for incentive awards in its entirety.

11  **IV.　CONCLUSION**

12  　　The Court **GRANTS** final approval of the settlement.  For the reasons set out above, the

13  Court further **GRANTS IN PART** Plaintiffs' counsel's request for attorneys' fees in the amount

14  of $156,500.00; **GRANTS** the request for costs in the amount of $20,000; and **DENIES** the

15  request for incentive awards for named Plaintiffs.  The parties are directed to implement this Final

16  Order and the settlement agreement in accordance with the terms of the settlement agreement.

17  The parties are further directed to file a stipulated final judgment within 21 days from the date of

18  this order.

19  　　**IT IS SO ORDERED.**

20  Dated: May 10, 2021

21

22  HAYWOOD S. GILLIAM, JR.
United States District Judge

23

24

25

26

27  [5] The only evidence presented by Plaintiffs is a statement in Plaintiffs' counsel's declaration that
they "responded to written discovery requests and produced documents relating to their purchases
of Defendant's products" and "conferred with Class Counsel concerning the status of the case, the

28  Complaint and amendment thereto, discovery responses, and the settlement."  Dkt. No. 61-1 ¶ 13.